MARY A. SHELLABARGER V. JOHN H. NAFUS.

1. MARRIED WOMAN; *Separate Property; Real Party in Interest.* Where the main question in a case is, whether a wife (who is the plaintiff) or her husband, is the owner of certain personal property, and the court instructs the jury, that "if they believe from the evidence that the plaintiff in this case is a married woman, and was, at the time of bringing this suit, and for some time prior thereto, then the jury must be satisfied from the evidence that the property in controversy in this case was owned by her at the time of her marriage, or is the proceeds or fruit of property so owned, or has come to her by descent, devise, or bequest from some person other than her husband, or was the fruit of her earnings from her separate trade or business;" and, "if the jury should not be satisfied from the evidence of the existence of any of the foregoing propositions, then the jury should find for the defendant;" and from the evidence in the case, said property may have been the proceeds from a gift to the plaintiff from some person other than her husband, *held,* that said instruction was erroneous.

2. WITNESS—*Competency of; Falsity goes only to Credibility.* The court below instructed the jury as follows: "If you should be satisfied that any witness in this case has willfully and corruptly testified falsely to any material fact, then it is your duty to disregard the whole of the testimony of such witness." *Held,* that such instruction is erroneous—(overruling *Campbell v. The State,* 3 Kas. 488, and other cases following that case.)

3. ——— *Province of Jury.* It is the province of the jury to determine the credibility of witnesses, and the weight of their testimony; and where any witness has testified willfully, corruptly, and falsely, to any material fact, it is the province of the jury to determine how much, or whether the whole of his testimony should be disregarded. No inflexible rule of law should be interposed between the witness and the jury, commanding the jury to take all, or exclude all, of his testimony.

*Error from Neosho District Court.*

REPLEVIN for 2120 feet of lumber, brought before a justice of the peace, by *Mary A. Shellabarger,* a married woman. *Nafus,* defendant, as constable, had taken the property upon process against plaintiff's husband. The case was appealed to the district court, and was there tried at the December

Term 1871. The material questions, and the instructions in relation thereto, are fully stated in the opinion, *infra*. Verdict and judgment for defendant, and plaintiff brings the case here on error.

*C. F. Hutchings*, for plaintiff:

1. The paper produced by defendant, if it really was an execution, was not produced by the justice, nor was the justice produced as a witness, nor was the record of any judgment produced, nor was the signature of the justice proved; nor was any evidence whatever introduced to show that the husband of plaintiff had ever been indebted to any person; nor was any other foundation whatever laid. Counsel hand a paper to defendant, and ask him what it is, and he is allowed to pronounce it "an execution," and the court thereafter recognizes the paper in that character, and in its instructions calls it an execution and says it was issued by a justice of the peace; and without any further proof it is used in evidence against our objection. Upon what theory could the defendant, in an action between himself and a third party, introduce in evidence his own indorsement made on a writ as an officer, and made after the commencement of the action? The statement of the defendant in the certificate indorsed on that paper was no evidence to show whether this property belonged to the plaintiff or not, and was utterly incompetent to prove anything in this action. If a constable can seize property of A., and then after suit brought by A. to recover it, write on a piece of paper that it is the property of B., and introduce his paper to prove it, there is very little security for private property. If the doctrine ruled by the district court be correct, then any person claiming to be a constable may confiscate property found in the possession of a married woman, unless she is the absolute owner, and his justification is complete by showing her coverture, though his writ may be forged, or based upon a void judgment, and she a stranger even to that. It is the settled rule that a plaintiff who attempts to justify the taking of goods on an execution set in motion by him

must show a valid judgment. (10 Kas. 70; 28 N. Y. 659.) The same rule is as invariably applied to an officer in an action brought against him by a stranger for taking his goods on an execution issued against another. (2 Greenl. § 629.) In this case no attempt even was made to show either a judgment, the genuineness of the pretended execution, or its return. On the contrary, the fact that it was not in the custody of the justice; that the justice was not brought as a witness, that it was in the possession of the constable, that no attempt was made to explain how he obtained possession of it, certainly rebuts the presumption (if any) that the officer had done his duty by returning the execution, and forces the conclusion that he had never returned the execution, but had kept in his own possession nearly two years after the return-day.

2. If said pretended execution was competent evidence, still it certainly will not be contended that it was conclusive, nor did its introduction authorize the court to take any question of fact from the jury. It will be observed that the defendant offered no proof to rebut the plaintiff's claim of ownership, except this paper and indorsement thereon. The plaintiff certainly made a *prima facie* case, and the jury must have found for the plaintiff, unless the defendant had overcome her *prima facie* case. It was a question for the jury, whether the execution and indorsement were genuine, and whether the defendant did in fact take the property *by virtue* of the same; yet the court in all of its instructions treats the defendant's defense as established, and tells the jury in the first instruction that the only question is, whether the plaintiff has a certain ownership, and if she has not, then they must find for defendant; and the court reiterates the same thing in his general instructions. These instructions are glaringly fallacious. Suppose the jury believed that the property was not plaintiff's, but was her husband's, and was in her possession; and they further believed that the defendant did not take it by virtue of the execution, as he claims; that there was no judgment against the husband, that the

husband owed no debts, that the pretended execution was fictitious, and that the defendant took the property forcibly, without any right so to do: would not the plaintiff be entitled to a return of the property though she had no title, except the possession, when it was taken from her? The court instructed the jury that the plaintiff could only recover by showing herself to be the *owner* of the property. Now, if the property was in the possession of the plaintiff when defendant took it, then she was entitled to a return of the property, unless the defendant had some lawful right to take it; and it is only necessary for the plaintiff in any case to show a right of *possession*. Code, subdiv. 2 of § 177, and § 185.

3. The instruction that the jury must reject the whole testimony of a witness, if they should find the witness had willfully testified falsely and corruptly, may be warranted by former decisions of this court. But it is clearly wrong in principle. To say to a jury, that they are the judges of all the facts, and in the same breath to say that under certain circumstances it is their *duty* to *disregard* the whole testimony of a witness, and not to use their judgment at all concerning it, and then to tell them, (as was done in a subsequent instruction,) that under their oaths they cannot ignore any testimony, but can only determine the measure of credit to be given it, is so grossly illogical and inconsistent that it is idle to say that courts which administer the science of law can tolerate it.

*Stillwell & Baylies,* for defendant:

1. So far as the judgment and execution mentioned in the answer of defendant are concerned, they stood admitted for want of a reply, and the only question to be determined was in regard to the ownership and right of possession of the property in controversy. We believe the instructions given to be correct, and they do not require any argument from us to uphold them.

2. The record shows that the property was not in the possession of plaintiff at the time the defendant levied thereon,

but was in possession of the husband of plaintiff. That being the case, it was absolutely necessary for plaintiff to have *demanded* of the defendant the return of the property before bringing suit. (12 Cal. 73.) It nowhere appears from the record that such a demand was ever made, which omission in proof is certainly fatal.

3. The plaintiff, being a married woman, and claiming to be owner of the property in her own right, and the evidence showing it was in a foreign jurisdiction that she became possessed (if at all) of the property by virtue of which she claimed to be the owner of the lumber sued for, did it not then devolve upon her to show that, by the laws of such foreign jurisdiction, she became the owner of said property there, freed from the claim of her husband? By the common law the husband, by virtue of the marriage, became the owner of the goods and chattels of the wife, and was entitled to the rents and profits of her realty. The married woman's act of our own state of course has no extra-territorial force, and unless the plaintiff became the owner by the laws of Michigan of the property she claimed to have purchased there, and which furnished the means by which she claimed to have acquired the lumber in dispute, then she could not have subsequently acquired a title, and thereby defeat the vested title of her husband, by the mere act of removing to this state. It was therefore necessary for her to prove and establish as a fact, the laws of the state of Michigan in force at the time of her alleged original acquisitions, and thereby show, if she could, that under said laws she acquired a valid title, notwithstanding her coverture. 2 Kent's Com. 93.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin, brought by Mary A. Shellabarger against John H. Nafus. It appears from the record that the defendant was a constable; that he held an execution against the property of the plaintiff's husband, one Solomon Shellabarger; that the constable levied said execution upon the property in controversy, as the prop-

erty of the plaintiff's husband; that the plaintiff then re-
plevied the property, claiming the same as hers, and claiming
that it never did belong to her husband. When the constable
levied on said property he found it on land occupied by the
plaintiff and her husband as their homestead, the title to
which land was in her husband. But the property was not
in the actual possession of either. It had been in the actual
custody of the husband, but it does not appear from the
record that it was ever in the actual custody of the plaintiff.
The whole case in the court below depended entirely upon
who owned the property. All other questions were merely
incidental or subsidiary to that. If the plaintiff owned the
property, she had a right to recover, however good the exe-
cution may have been. But if her husband owned it, then
she had no right to recover, however worthless the execution
may have been. If her husband owned the property, and
the constable for any cause obtained it wrongfully from him,
then no person but her husband had any right to sue. A wife
has never been recognized as the legal guardian of her husband
to such an unlimited extent that she may protect his legal
rights by herself becoming the plaintiff, and prosecuting the
action for him in her own name. We mention this, merely
because it seems to be claimed that, if the defendant failed to
prove that the execution was founded on a valid judgment,
by the introduction in evidence of the record of such judg-
ment, that the plaintiff must then recover, although the prop-
erty might at the time the execution was levied have belonged
to her husband, and not to herself. A vast number of objec-
tions were made, and a vast number of exceptions taken by
the plaintiff in the court below. And a large number of
questions have been raised and discussed in this court; but
with the exception of the errors hereinafter mentioned, we
think the court below committed no substantial error.

As before stated, the main question in the case in the court
below was, who owned the property in controversy? With
reference to ownership, the court below instructed the jury
as follows:

"The court instructs the jury, that if they believe from the evidence, that the plaintiff in this case was a married woman, and was at the time of bringing this suit and for some time prior thereto, then the jury must be satisfied from the evidence, that the property in controversy in this case was owned by her at the time of her marriage, or is the proceeds or fruit of property so owned, or has come to her by descent, devise or bequest from some person other than her husband, or was the fruit of her earnings from her separate trade or business. If the jury should not be satisfied from the evidence of the existence of any of the foregoing propositions, then you should find for the defendant."

Now the foregoing instruction is not correct, as an abstract proposition of law; nor is it correct as applied to this case. If the property in controversy was a gift to the plaintiff from any person except her husband, or if it was the proceeds, issues, or profits of any such gift, or if it was the proceeds, issues, or profits of any property which had previously come to her by descent, devise, or bequest, it would certainly be her own separate property, and be exempt from any execution issued against her husband's property. Indeed, if she had stolen it, and then claimed it as her own, we think she would have been the owner thereof as against all the world except the real owner. According to the plaintiff's testimony, she has owned property and been buying, selling, and trafficking in property for several years. Some of her property came to her from her father's estate, some from her own earnings, some from the proceeds, issues, and profits of other property, and the source of some of it was not shown. The property in controversy was purchased, as the plaintiff testifies, with her own money; but where she got the money is not very definitely shown. From anything that appears in the record, the greater portion of it may have been a gift, or the proceeds of a gift from some person other than her husband. But however it may have come, she testifies positively that the money was hers. Whether it was hers or not, was a fact for the jury; and if the case had been submitted to the jury on proper instructions, we think the verdict would have

36—15 KAS.

been conclusive. But as the foregoing instruction was erroneous, and prejudicial to the rights of the plaintiff, and as the verdict and judgment were against the plaintiff, we think the judgment of the court below must be reversed, and a new trial granted.

There is another question raised in this case; and as the case must be sent back to the court below for a new trial, upon the grounds heretofore mentioned, we think this is as good a time as we shall ever have to present our views upon this other question. The court below also instructed the jury as follows: "If you should be satisfied that any witness in this case has willfully and corruptly testified falsely to any material fact, then it is your duty to disregard the whole of the testimony of such witness." Under this instruction the jury evidently disregarded the testimony of the plaintiff. This instruction is fully warranted by the decisions of this court. (See *Campbell v. The State*, 3 Kas. 488; *Hale v. Rawallie*, 8 Kas. 136; *The State v. Horne*, 9 Kas. 131; *Russell v. The State*, 11 Kas. 322, 323; *Gannon v. Stevens*, 13 Kas. 461.) And yet we think the instruction is erroneous: *Mead v. McGraw*, 19 Ohio St. 55, 64; *State v. Williams*, 2 Jones Law (N. C.) 257, 262; *Mercer v. Wright*, 3 Wis. 568, 570; *Knowles v. The People*, 15 Mich. 408; *Fisher v. The People*, 20 Mich. 147; *Lewis v. Hodgdon*, 17 Maine, 267, 273; *Blanchard v. Pratt*, 37 Ill. 243, 246; *State v. Stout*, 31 Mo. 406; *Callahan v. Shaw*, 24 Iowa, 441. Whether the jury should disregard the whole of the testimony of a witness in such a case, is a matter resting entirely with them. They are the exclusive judges of the credibility of the witnesses, and the weight of their testimony. They may wholly disregard the testimony of any witness, if from the evidence before them they consider such witness as wholly unworthy of credit. Or they may disregard a portion of the testimony of any witness, and give to every other portion full faith, credit, and consideration. Or they may give to one portion of the testimony of any witness greater weight and credit than they may to some other portion of such testimony. The jury ought to be al-

lowed to weigh every portion of the testimony of every witness, and to give to each portion of the testimony just such consideration as it is entitled to, considering all the facts and circumstances of the case. It is within the common experience of all men, that the different portions of the testimony of the same witness may differ vastly in value. A witness may, under great temptations, and in some isolated case, swear falsely, and yet where the temptation is removed, where there is nothing to operate on his hopes and fears, his passions and prejudices, where he has no interest in the matter except to tell the truth, his testimony may be of great value. And this being so, no inflexible rule of law should be interposed between the witness and the jury, commanding the jury to take all, or to exclude all, of his testimony. So far as the decision made by this court in case of *Campbell v. The State*, 3 Kas. 488, and the decisions in such other cases as follow that case, are in conflict with the foregoing views, said cases are overruled.

. The judgment of the court below will be reversed, and cause remanded for a new trial.

All the Justices concurring.