## THE STATE OF KANSAS v. ISAAC POTTER.

1. CHANGE OF VENUE, *in Criminal Actions; Jurisdiction.* Where a change of venue is granted in a criminal case, and the proceedings are so irregular as to be wholly void, then the court to which the case is taken does not acquire jurisdiction of the case, and the question of jurisdiction may then be raised at any time in that court, or the defendant may even wait, and, if convicted and sentenced, raise the question for the first time in the supreme court on appeal.

2. ———— But where the proceedings of the court granting the change of venue are not so irregular as to be wholly void, but are merely irregular or voidable, then the question as to the regularity of such proceedings must be raised at the earliest convenient opportunity.

3. ———— Therefore, where a change of venue is erroneously granted on the application of the defendant in a criminal case, and the case

is taken to another court, and there regularly called for trial, and the defendant, without questioning the jurisdiction of the court, moves for a continuance of his case, and then, after his motion is overruled, and a jury impanneled, challenges the jury because they are not from the county or district where the offense is alleged to have been committed, and then, after his challenge is overruled, and evidence introduced, objects for the first time to the jurisdiction of the court, but does not even then object for any irregularity in taking the change of venue, and then, after he has been tried and convicted, and a motion for a new trial overruled, raises the question for the first time, and on a motion in arrest of judgment, that the order granting the change of venue was .irregular, and erroneously granted: *Held,* That the objection to the change of venue is made too late, and the order changing the venue will be considered valid.

4. ——— *Change from One District to Another.* A change of venue in a criminal action from one judicial district to another, granted on the application of the defendant, is not void, although the application may not be in writing, and although sufficient facts therefor are not shown and do not exist. Such a change of venue is irregular and erroneous, but the error is against the state, and not against the defendant.

5. RIGHT OF TRIAL BY JURY, *of County or District; Waiver.* The constitutional right of a defendant in a criminal action to be tried "by an impartial jury of the county or district in which the offense is alleged to have been committed," (Const., Bill of Rights, § 10,) is a mere personal privilege which the defendant may waive or insist upon at his option. It is not a right conferred upon him from considerations of public policy; and public interests would not be likely to suffer by a waiver thereof.

6. PRESENCE OF ACCUSED, *at Hearing of Motion for Change of Venue.* If it were necessary that the defendant in a criminal case should be personally present in court when a change of venue is granted, (which is questioned,) still, where the record does not show that he was absent, and where the order granting the change would, if liberally interpreted, lead to the conclusion that he was present, the supreme court will, in favor of the regularity and validity of the proceedings of the court below, presume that the defendant was personally present.

7. CLERICAL ERROR, *in Title of Action, Immaterial.* Where the clerk, through a clerical mistake in entitling the order changing the venue, writes the word "manslaughter," where the words "murder in the second degree" should have been written—the rest of the order being correct—*held,* the mistake will not invalidate the order.

8. ORDER FOR REMOVAL OF PRISONER, *Where Venue is Changed.* Where a court granting a change of venue in a criminal case fails

to make any order for the removal of the defendant to the jail of the county to which the cause is removed (Crim. Code, sec. 186,) and no such order is asked for, and no inconvenience is shown to have resulted from the failure to make such order, and the defendant is personally present at the trial of the cause, where he is tried, convicted, and sentenced: *Held*, That the judgment of the district court will not be reversed merely because of such failure to make such order.

9. AGE AND SIZE OF DECEASED; *Evidence; Competency.* When the defendant is charged with the offense of murder in the second degree, and the evidence shows that the defendant killed the deceased with a piece of fence rail, it is not error for the state to show among other things that the deceased was a man about sixty years of age and about five feet and six or seven inches high.

10. INSTRUCTION; *Testimony of Corrupt Witness; Province of Jury.* It is error for a court to instruct the jury that, "If any witness has willfully testified falsely as to any material fact in the case, then the jury should disregard all the testimony of such witness." Even where a witness has testified willfully corruptly and falsely to a material fact in a case, still the question as to whether the jury should disregard the whole of his testimony should be left entirely to the jury themselves. But still, where such erroneous instruction was given, and not excepted to, the supreme court will not consider the error.

11. INSTRUCTIONS; *Res Gestæ; Continuous Act; Lapse of Time.* Where evidence was introduced on the trial of Isaac Potter for murder in the second degree, showing that George Potter, at Brack's corner, in the presence and hearing of the defendant said "that he wanted to kill the old man," (meaning the deceased,) that that was his intention," and shortly afterward George and Isaac Potter followed the deceased, each armed with a piece of a fence rail, and Isaac did then and there "kill the old man," *held*, that it was not error for the court to refuse to instruct the jury, "that unless they find from the evidence that in the altercation at Brack's corner George Potter was aided, counseled or abetted by Isaac Potter in what he did, they cannot take said altercation at Brack's corner, or any acts, words or conduct of George Potter into consideration in determining the guilt or innocence of defendant."

12. ———— *Questions of Fact; Province of Jury.* Where there is sufficient evidence introduced to prove that the defendant, who is charged with murder in the second degree, is guilty as charged, although some of this evidence is contradicted by other evidence, it is not error for the court to refuse to instruct the jury that, "under the evidence in this case they cannot convict the defendant of murder in the second degree." It is the province of the jury to weigh the contradictory and conflicting evidence.

13. VERDICTS —*May be Corrected in Criminal Cases.* Where a jury, in a

case of murder in the second degree, return a verdict as follows—
"We, the jury, find the defendant guilty as charged," it is not error
for the court, after being informed by the jury that they intended to
find the defendant guilty of murder in the second degree, to allow
the verdict, with the consent of the jury, to be amended so as to
read as follows—"We, the jury, find the defendant guilty of murder
in the second degree, as charged in the information."

*Appeal from Leavenworth District Court.*

INFORMATION for murder in the second degree, filed orig-
inally in the district court of Atchison county, where a trial
and conviction were had. The defendant appealed to this
court, when such conviction was reversed and a new trial
ordered. (*The State v. Isaac Potter*, 13 Kas. 414.) After
such reversal a change of venue was taken from Atchison
county to Leavenworth county. The proceedings subse-
quent to the order changing the place of trial, and the errors
complained of on this appeal, are fully stated in the opinion,
*infra.* Another case growing out of the same homicide also
came to this court on appeal from Atchison district court, and
was heard and decided here at the last term. (*The State v.
George Potter*, 15 Kas. 302.) Full statements of the facts
will be found in the reports referred to—13 Kas. 414, and
15 Kas. 302. The present conviction was had at the May
Term 1875 of the Leavenworth district court, and the de-
fendant brings the case here on appeal.

*Horton & Waggener,* and *C. F. Cochran,* for appellant:

At the June Term 1874 of the district court of Atchison
county an information was filed against Isaac Potter, George
Potter, and Walter Boyle, charging them with murder in the
second degree, in the killing of Jacob B. Keeley. A separate
trial was had, and Isaac Potter convicted of murder in the
second degree, and sentenced to imprisonment for the period
of ten years, from which judgment and sentence he appealed
to this court. The court here reversed said judgment, and
granted a new trial. At the November Term 1874 a change
of venue was ordered by the district court of Atchison county

in a case of "The State vs. Isaac. Potter," on an information for *manslaughter*, to the criminal court of Leavenworth county. At the May Term of the district court of Leavenworth county, (the criminal court of said county having been abolished,) Isaac Potter was tried on a copy of the information certified from Atchison county, and convicted of murder in the second degree, and sentenced to the penitentiary for ten years, from which judgment and sentence he now appeals to this court.

1. The court erred in not sustaining the challenge of defendant to the entire array of jurors, as the same was not a "jury of the county or district in which the offense was alleged to have been committed." Const., Bill of Rights, § 10; *Wheeler v. The State*, 24 Wis. 52; *Osborn v. The State*, 24 Ark. 629; *State v. Denton*, 6 Coldw. (Tenn.) 539.

2. It was improper for the court to admit evidence as to the age, size and strength of the deceased. This was not necessary to prove any ingredient of the alleged crime. It could serve no purpose but to prejudice the minds of the jury against defendant. The state could with as much reason introduce evidence as to the good character of the deceased, as to introduce evidence of the deceased's want of ability to make, or to resist, an assault, before defendant's defense had been disclosed. The reasons for such rules are obvious. "Such testimony tends to distract the minds of the jury from the principal question, and should only be admitted when absolutely essential to the discovery of the truth." *The State v. Potter*, 13 Kas. 424.

3. The court erred in its charge, that the jury should disregard *all* of the evidence of any witness who had willfully testified *falsely*. *Shellabarger v. Nafus*, 15 Kas. 547.

4. The court erred in refusing to give instruction No. 23, asked for by defendant. It will be seen by an examination of the testimony, (all of which is preserved in the transcript,) that all of the witnesses agree, that in the altercation at Brack's corner, between George Potter and the deceased, (which was the inception of the difficulty that terminated so unfortunately,) that Isaac Potter, the defendant here, in no

manner counseled, aided, or abetted George Potter in what he did. To say the least, there is evidence tending to show that Isaac Potter took no part in that disturbance. On what hypothesis the court refused this instruction we are unable to see. That the defendant was prejudiced by such refusal of the court, there can be no question, for if Isaac Potter was bound by the acts and conduct of another, in which he took no part in any manner whatever, it was useless for him to make any defense.

We also insist that the court erred in refusing to give instruction No. 25, asked for by defendant. We insist that there is an entire absence of testimony tending to show the defendant guilty of murder in the second degree; and while we do not desire to reflect upon the jurors before whom he was tried, we feel perfectly justified in claiming to this court that defendant was so convicted through prejudice, and not from the testimony.

5. The motion for a new trial should have been sustained for the errors of law hereinbefore pointed out, and because the verdict is not sustained by sufficient evidence.

6. The court erred in overruling the motion in arrest of judgment. The district court of Leavenworth county had no jurisdiction of said case. The pretended order for a change of venue from the district court of Atchison county was made in a case with the following title, viz.: "The State of Kansas v. Isaac Potter.—Information for *Manslaughter*." There is no pretense that the transcript discloses any order for a change of venue in any case against Isaac Potter for *murder in the second degree*. The words " Information for Manslaughter," are used to designate *the case transferred*, and form a part of the order and record; yet the court assumed to put defendant upon trial for murder in the second degree, over the objections of defendant. It may be claimed that this was a clerical mistake, or error. Is there anything in the record upon which to base such a claim? Clearly not. Is there anything in the record here presented that justifies this court or the court below in saying that there was only one case pending in the

district court of Atchison county against Isaac Potter, and that that was on an information for murder in the second degree? Does the record disclose any order for a change of venue from the district court of Atchison in a case against Isaac Potter on an information for "murder in the second degree?" If the record does not disclose this jurisdictional fact affirmatively, has the court a legal right to assume it?

Did the district court of Leavenworth county, from this state of the record, have jurisdiction to try defendant for murder in the second degree? What is jurisdiction? "The power to hear and determine a cause is jurisdiction." 6 Peters, 691, 709. "To have jurisdiction in a criminal case, is to have power to inquire into the facts, to apply the law, and to declare the punishment in a regular course of judicial proceeding." 3 Metcalf, 460, 462. If a change of venue was granted in a case of "The State vs. Isaac Potter, in an information for Grand Larceny," would the court to which a change of venue was granted have authority to place him upon trial for murder, simply from the fact that other papers filed in the case showed that he had been charged with murder? The only way the district court of Leavenworth county can acquire jurisdiction of a criminal case on a change of venue from another district is from the order granting such change, exclusively and alone. The record must show jurisdiction affirmatively. Nothing can be taken by intendment.

7. The statute authorizing a change of venue was not complied with. See §§ 173 to 179, criminal code. The pretended order granting a change of venue, is assumed to have been made upon the affidavit of B. P. Waggener; but we submit that said affidavit did not authorize the judge of the court to enter the order that was entered. A defendant in a criminal case may have it removed to another county in the same judicial district, whenever it shall appear that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against him that a fair trial cannot be had therein; (Crim. Code, § 174;) but cannot have the cause removed to another district, unless the inhabitants of the *entire*

*district* are so prejudiced that he cannot have a fair trial in the district; (Crim. Code, § 175.) The application, if made by defendant, must be by petition, setting forth the facts upon which the application is made, which must be made to appear by affidavits to the satisfaction of the court; (Crim. Code, § 177.) In this case nothing of this kind was done or attempted. The court, as shown by the affidavit, stated the case would be transferred to Leavenworth county, but no order of that kind was entered. On the 28th of January 1875, said affidavit was filed, upon which the judge on that date entered the order *nunc pro tunc*. The *record* shows that the order was entered December 12th 1874, but the *order itself* shows it was made upon an affidavit that was not made until January 28th 1875. Upon this statement of facts as shown by the record, we claim, that the court had no authority under the sections above referred to, on its own motion, on account of prejudice existing against defendant which would prevent his having a fair trial in Atchison county, to remove said case to Leavenworth county in the First Judicial District. We also claim, that the order granting a change of venue is an absolute nullity, and conferred no jurisdiction upon the district court of Leavenworth county. That the requirements of a statute authorizing a transfer of a case from one court to another must be strictly observed, and everything necessary to pass jurisdiction thereunto must appear in the record. (*Sweepson v. Cole,* 13 Fla. 337.) We further claim, that, if we concede for the sake of argument, that the court in ordering a change of venue complied with the statute authorizing such a change, we contend that the statute is in conflict with § 10 of the Bill of Rights, wherein it is provided that in all prosecutions the accused is entitled to a "trial by an impartial jury of the county or district in which the offense is alleged to have been committed." The only authority the court or judge has to order a change of venue on his own motion is derived from §§ 178, 179 of the crim. code. And the wisdom of the section of the constitution above referred to is forcibly

illustrated in the case at bar. The defendant made no application to remove his trial beyond the Second Judicial District, and the record fails to show that the judge of that district was in any manner disqualified; yet of his own motion, as stated in his order, he removes the trial to another district on account of the bias and prejudice of the inhabitants of the county of Atchison. *Wheeler v. The State*, 24 Wis. 52; *Osborn v. The State*, 24 Ark. 629.

8. But it may be claimed that the record does not show that defendant objected to such order being made, and has by reason thereof, waived his right to object after the order is made. It will be observed that the record does not show that the defendant was present when the order was made. We claim that the defendant must be present in court whenever any proceedings or acts are had or done, and this must appear affirmatively. An order of this kind cannot be made in the absence of the accused. *Ex parte Bryan*, 44 Ala. 402; 46 Ala. 227; *Dougherty v. Commonwealth*, 69 Penn. St. 290; *State v. Bray*, 67 N. C. 283; *Stewart v. State*, 7 Coldw. (Tenn.) 338; *Mauere v. The People*, 43 N. Y. 1.

The case of *Wheeler v. The State*, 24 Wis. 54, is certainly conclusive on the question of waiver. The second change of venue was granted on the application of the defendant herself, and the court says that "the prisoner, whose appearance was compulsory, cannot be held to have waived her rights by any steps taken by her after the removal for the purpose of defending herself as far as she might be able." We contend that a defendant in a criminal case cannot waive any of his legal and constitutional rights. 18 N. Y. 135; 8 Ohio St. 640.

9. The record shows that the defendant was in prison in Atchison county, and has never been released therefrom since his arrest; and at the time the order for a change of venue was made, he was in actual custody and confinement. The court, in the order, directs the clerk to "forthwith prepare a full transcript of this cause and forward the same to the clerk of the criminal court of Leavenworth county," but in

no manner makes any order in compliance with §186 of crim. code. The record presents the strange anomaly of the defendant being confined in the jail of Atchison county on a charge of murder in the second degree (from which the record fails to show that he has been removed,) and being on trial, and personally present, in Leavenworth county, at the same time, on a change of venue on an information for manslaughter. This state of facts can only be reconciled upon the theory that the defendant is possessed of that attribute of ubiquity peculiar only to omnipotence; yet upon such a record, defendant has been convicted of murder in the second degree, and is now in the penitentiary.

10. The court erred in receiving the verdict in the manner it did, over the objections of defendant.

*Aaron S. Everest,* for The State:

1. The challenge made by the defendant to the *array* of the jury, was indefinite, and in no manner pointed out the objections thereto. The reasons assigned, "That the same did not constitute a constitutional jury, and were not a jury of the county or district where the offense is alleged to have been committed," would not in any manner convey even an impression to the court below that any irregularity existed in the transfer of said case. The records show that no such objection was made or pointed out to the court below, nor its attention called to any such question. We do not think that kind of practice will admit of the appellant now assigning as error what was never presented to or passed upon by the court below. We do not understand that the statute provides for any such ground of challenge; and if we resort to the practice at common law, we find that it recognized two principal grounds of challenge to a jury, one being to the array, by which it means the whole jury as it stands arrayed in the panel; and this challenge, as recognized by the practice in this country, was based on the partiality or default of the sheriff, coroner, or other officer that made the return, or summoned the jury, and such challenge was required to be made in

7—16 KAS.

writing. We do not believe that this court will adopt the action of the defendant in seeking to question the regularity of the transfer by a challenge to the array of the jury, as correct practice, founded upon precedent, or justice to a court who is to pass upon a question thus presented. We do not understand that our code in any manner recognizes the practice of a challenge to the array of the jury. If so, certainly not for the reasons assigned, or in the manner in which it was sought to be done by the defendant in the court below.

2. There was no error in permitting the question to be asked as to the apparent age of the deceased. Nor did the answer of the witness prejudice any substantial right of the defendant. The testimony elicited merely went to the identification of the deceased, and we do not think that the minds of the jury were in any manner, by reason thereof, diverted from the principal question in the case. Such questions and testimony cannot possibly have the remotest connection with any matters connected with the character of the deceased, or with the principles enunciated by this court in the case of *The State v. Potter*, 13 Kas. 424.

3. No error was committed in refusing to give instruction No. 23, asked for by defendant, when taken in connection with the entire charge and instructions given in the case. And we also claim that upon a full examination of the charge of the court, and the instructions given to the jury, that no error was committed in refusing to give instruction No. 25, asked for by defendant.

4. Neither do we think this court is called upon by any principle of law to examine the volume of evidence to ascertain, (in a case of conflicting testimony, and especially when, as in the case at bar, the defendant himself admits, in open court, upon the trial of the action, that Jacob B. Keeley died from the effects of the fatal blow inflicted by defendant,) whether, if this court had been jurors upon the trial, they might have arrived at a different verdict. That the defendant killed Keeley on the 24th of June 1874, may be taken as established; and that such killing was shown from the

facts and the circumstances to constitute murder in the second degree, is no longer a subject of discussion.

5. There was no error in overruling the motion in arrest of judgment. This court having decided that the information charged the defendant with murder in the second degree, we suppose from the fact that in the order for change of venue an indorsement was made by some person of the words "Information for manslaughter," it cannot be said to be any error affecting the substantial rights of the accused. The prisoner was tried upon that information, and this court will not presume error, or that any other information than the one disclosed in the record had ever been filed against the defendant. The papers transmitted upon the change of venue clearly indicated the offense with which the accused stood charged.

6. We think that the spirit of the statute authorizing a change of venue, when viewed in the light of the attending circumstances disclosed by the record, was complied with. The record shows that it was made upon the application of defendant's counsel, and it was on their application that a change of venue was granted, and for the further reason that it was within the personal knowledge of the court that the defendant could not have a fair trial in the county of Atchison. It was perfectly proper for the court to have the order for change of venue entered *nunc pro tunc*. 4 Ala. 231.

7. In the absence of any affirmative showing to the contrary, it will be presumed that the defendant was present during the proceedings complained of. 17 Iowa, 18; 2 G. Greene, 270; 14 Mich. 300; 19 N.Y. 549; 23 Ind. 24. But in any event, we claim that the defendant was bound by the acts of his counsel. *People v. Rathburn*, 21 Wend. 509; *The State v. Montgomery*, 3 Kas. 263. The presumption is that the court did its duty. But we do not understand that it is absolutely necessary for the defendant to have been personally present: 19 Iowa, 447; 17 Cal. 389. But can the defendant, after conviction, under our criminal procedure, raise the question (for the first time) as to the legality of the transfer by a motion in arrest of judgment? Motion in arrest

of judgment in criminal cases is now governed wholly by statute, and embraces only the two points therein enumerated. *Dillon v. State,* 9 Ind. 408; *Guy v. State,* 1 Kas. 448, 452, 453; *Montgomery v. State,* 3 Kas. 263, 274, 275.

8. As to the point of the competency of the defendant to waive compliance with the statutory provisions for a change of venue, we suppose it is too late to question at this day that a defendant may waive a statutory right in a criminal proceeding. And we understand that this court has decided that the defendant in a criminal case may, by his conduct, waive the right of arraignment and plea, especially in cases when it appears that the defendant was present in person and by counsel, announced himself ready for trial upon information, and submitted the question of his guilt to the determination of the jury: *The State v. Cassidy,* 12 Kas. 550; *The State v. Lewis,* 10 Kas. 157; *Hensche v. State,* 16 Mich. 46; 30 Ind. 266; 18 Ind. 389.

9. If we should admit, for the purposes of this argument, that technically construed, the grounds upon which said change of venue was granted, did not, under the provisions of the statute, provide for such change to be made to the district court of a county outside and not within the judicial district of the court granting such change, still we contend that, as the change was procured by the defendant, at his request, and for his own benefit, and to a court having competent jurisdiction of that species of offenses of which the defendant was charged, it is not such irregularity as can be taken advantage of by the appellant for the first time after trial and verdict. We understand the principle of law well settled, that a prisoner cannot complain of proceedings beneficial to him, and in compliance to his request. *Nash v. State,* 2 G. Greene (Ia.) 286. And we understand the law to be that an irregularity in a proceeding in a criminal case would be waived by failing to object, and submitting to a trial and verdict. *Harriman v. State,* 2 G. Greene, 270.

The appellant, now, after waiting and taking the chances of an acquittal or conviction, asks the court to repudiate what

has been done at his own request and for his benefit. Such a practice is not to be commended, and it cannot be supposed that an experiment of this kind will be successful, unless this court should deem itself bound by some controlling and absolute rule of law, for, after taking the chances for a successful issue, the defendant should not be permitted to repudiate the proceedings, and avail himself of the chances of a more favorable result hereafter. The real question, we apprehend, for this court to decide is, does the record disclose any errors, defects, or exceptions, which affect the substantial rights of the accused? If not, this court will give judgment without regard to any technical errors, defects, or exceptions appearing in the record. Crim. Code, § 293; *Laurent v. The State*, 1 Kas. 313; *Morton v. The State*, 1 Kas. 468; *Millar v. The State*, 2 Kas. 174.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal action for murder in the second degree. The prosecution was instituted in Atchison county, and was removed therefrom on change of venue to Leavenworth county, where the defendant was tried, convicted and sentenced to ten years' imprisonment in the penitentiary. The defendant now appeals to this court. This is the second time that this case has been in this court. (*The State v. Potter*, 13 Kas. 414.)

The first supposed error complained of by the defendant is the removal of the cause from Atchison county to Leavenworth county. The record upon this subject shows among other things the following proceedings had in the district court of Atchison county, to-wit:

"Upon application of the defendant, by his counsel Horton, Waggener, and Cochran in open court, it was ordered by said court, that the defendant, Isaac Potter, be granted a change of venue for his trial herein to the criminal court of Leavenworth county, it being within the knowledge of this court that prejudice against him exists which would prevent his having a fair trial, in said county of Atchison; there also having been two trials of this same offense, convictions in

both cases. The application for removal having been made by defendant in open court, thereupon the court on its own motion, and for the reason aforesaid, and within his knowledge, does grant the change of venue in said case; and the clerk will forthwith prepare a full transcript of the cause and forward the same to the clerk of the criminal court of Leavenworth county."

It will be seen from the foregoing that the defendant did not only fail to make any objection to the change of venue, but that the change was actually made upon his application, and at his request. After said change of venue was granted the district court of Leavenworth county became the successor of the criminal court of Leavenworth county: (Laws of 1875, page 125;) and this cause was then taken by statute to said district court. The case was there regularly called for trial, the defendant and his counsel being present. The defendant did not then raise any question as to the jurisdiction of the court, but on the contrary moved for a continuance of the case until the next term of the court, and filed affidavits in support of his motion. The state then agreed that the affidavits should be read in evidence, on the trial, as the depositions of the alleged absent witnesses; and the case was not continued. A jury was then impanneled. The defendant then "challenged the array of jurors, and each and every one of them, for the reason that the same did not constitute a constitutional jury, and were not a jury of the county or district where the said offense was alleged to have been committed." But again the defendant failed to raise any question as to the jurisdiction of the court. The state then introduced its testimony. The defendant objected to the same, and to different parts thereof, for various reasons, among which was the following: "that the said court had no jurisdiction of the person of the said defendant, or the subject-matter of said case." This was the first time that the question of jurisdiction was raised. "But [even then] no objection was made or pointed out to said court as to any irregularity in the transfer of said case from the said county of Atchison to this

1. Change of venue in criminal cases. [Leavenworth district] court, nor was the attention of said court called to any irregularities therein at said time," or at any other time, before the verdict was rendered, or even before a motion for a new trial was overruled. The first time that any question as to any irregularity was raised in taking said change of venue was by the defendant on a motion in arrest of judgment. It would seem that the defendant chose to experiment upon the chances for an acquittal, and if convicted then to experiment upon the chances for a new trial, before calling the attention of the court below to any irregularity in taking the change of venue. Now, if the taking of the change of venue were wholly void, then the defendant would have been safe in making such experiments; for if the taking of said change of venue had been void, then the district court of Leavenworth county would not have obtained any jurisdiction thereby to try the

. Jurisdiction. cause; and if the district court did not obtain any jurisdiction of the cause, then the defendant could have raised the question of jurisdiction at any time in that court, or he could even have waited and then raise the question for the first time in this court. But if the taking of said change of venue were not wholly void, but merely irregular or voidable, then it would have been necessary for the defendant to raise any question as to the irregularity in taking the change at the earliest convenient opportunity. Now we do not think that the taking of said change of venue was wholly void, although it must be confessed that it was very irregular. But the irregularity was against the state, and not against the defendant. The order changing the venue should have been set aside on the motion of the state, if the state had asked for the same to be done. It might possibly have been set aside on the motion of the defendant, if he had asked that it should be done at any time before he made his motion for a continuance, or possibly at any time before the trial of the case was actually commenced. But it would have been beyond all reason for the court to have set aside the order granting the change after a trial had been completed,

and the defendant found guilty. Even a defendant in a criminal case cannot trifle with the court in that manner. He cannot procure a change of venue irregularly, and then, when he is convicted, have the conviction set aside because of the irregularity. Or at least, he cannot have this done unless the order granting the change of venue is so entirely irregular as to be wholly void. In a case like the one we are now considering, the proceedings of the court granting the change should be construed liberally, so as not to hold the granting of the change void. That the district court of Atchison county had the power, on a proper application, and proper showing, to change the venue to Leavenworth county, there can be no question. The district court can change the venue in a criminal case on the application of the defendant in either of the following cases: "*First,* Where the judge of the court in which the cause is pending is near of kin to the defendant by blood or marriage. *Second,* Where the offense charged is alleged to have been committed against the person or property of such judge, or some person near of kin to him. *Third,* Where the judge is in anywise interested or prejudiced, or shall have been of counsel in the cause." (Criminal Code, §173.) *Fourth,* "Whenever it shall appear, * * * that the inhabitants of the entire district are so prejudiced against the defendant that a fair trial cannot be had therein." (Criminal Code, §175.) And, "Whenever it shall be within the knowledge of a court or judge that facts exist which would entitle 4. Change from a defendant to the removal of any criminal cause, one district to another. on his application, such judge or court may make an order for such removal, without any [formal] application by the party for that purpose." (Criminal Code, §178.) In the present case the defendant made the application for the removal, but it was informal, and even insufficient under the statutes. It was informal, because not in writing: (Criminal Code, §177;) and it was insufficient, because the facts upon which it was founded did not entitle the defendant to have the cause removed to another district. (Criminal Code, §§174, 175.) Atchison county is in the second judicial district, and

Leavenworth county is in the first. The district court of Atchison county therefore erred in granting the defendant's application. But the error was against the state, and not against the defendant. The error was in his favor. And therefore he has no right to complain. But while the order granting the change was erroneous, it was not void. It was upon a subject over which the court had complete jurisdiction, and although erroneous is nevertheless valid until set aside or reversed by competent authority. The state has never asked to have it set aside or reversed; and the defendant cannot legally ask to have it so done, as the order was made on his application.

The defendant seems to claim that he could not waive his constitutional right to be tried "by an impartial jury of the county or district in which the offense is alleged to have been committed." This is a mistake. This right is merely a personal privilege, bestowed upon the accused, which he can waive or insist upon at his option. The constitution provides that, "In all prosecutions, the accused shall be allowed to * * * have * * * a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." (Const., Bill of Rights, § 10.) But the constitution nowhere provides that the accused shall in all cases, and under all circumstances, be tried by such a jury, and be tried in the county or district in which the offense is alleged to have been committed; nor does it anywhere provide that the accused shall not have the power to waive his said right or privilege. Said provision of the constitution does not pretend to confer power upon any tribunal, person, or body of persons. It is really only a limitation of the power elsewhere conferred by the constitution upon the government of the state to punish crime in the manner thought best by the lawmaking power of the state. The right to try, to convict, and to punish persons accused of crime, is conferred by other provisions of the constitution. And except for this provision, a law might be passed to try a defendant in a criminal action,

<div style="margin-left:0">5. Right of trial by jury of county or district; waiver.</div>

even against his will, before any jury, and in any part of the state. But with this provision, a defendant in a criminal action can be tried by any other jury, and out of the county and district where the offense is alleged to have been committed, only with his consent. It is too late now to suppose that any person of full age and sound mind cannot waive a merely personal right, or personal privilege, although such person may be a defendant in a criminal action, and although such right or privilege may be conferred upon him by the constitution. Of course, there are many rights conferred upon individuals from considerations of public policy which are not merely personal privileges, and which cannot be waived. But they are such rights as public policy requires to be exercised, and from the waiver of which the best interests of the public would be likely to suffer. They are conferred upon individuals for the benefit of the public, and not merely for the benefit of the individual. But such rights may be conferred by statute as well as by the constitution. We do not suppose that any one will claim that any question of public policy can enter in so as to affect the question we are now considering.

It is also claimed by the defendant, that whenever a court grants a change of venue in a criminal case the defendant

6. Presence of accused, at hearing of motion.

must be present in the court in person; and that in the present case the defendant was not present in the court in person when said change of venue was granted. Now, it may certainly be questioned whether it is necessary for a defendant to be personally present in such a case. But even if it were necessary, we would presume in favor of the regularity and validity of the proceedings of the court below, where there is nothing to show the contrary, that the defendant was personally present in the court when said change of venue was granted. The language of the order itself, liberally interpreted, would lead to such a conclusion.

The defendant also claims that the order granting the change of venue is void, because at the head of the order,

7. Mistake in
title of action. where it is entitled, it reads "Information for manslaughter," instead of "Information for murder in the second degree." There can be no question that the order was made in this case, and the mere clerical mistake of the clerk in writing "manslaughter," instead of "murder in the second degree," cannot invalidate the order.

The defendant also seems to make a point upon the ground that the district court of Atchison county did not make any 8. Order for removal of prisoner. order, in accordance with §186 of the criminal code, for the removal of the defendant to the jail of Leavenworth county. Now, as the defendant was personally present at the trial of his case in Leavenworth county, and has not shown that any inconvenience was caused by a want of said order, or that he ever asked for or desired any such order, we think that no substantial right of his was prejudicially affected by a want of such order. We suppose the failure to make the order was wholly immaterial.

The defendant claims that, "It was improper for the court to admit evidence as to the age, size, and strength of the deceased," and refers us to pages 25, 27 and 37 of 9. Age and size of deceased. the record. The only evidence found there, objected to, is evidence showing that the deceased was a man about sixty years of age, and about five feet and six or seven inches high. We see nothing very improper in this.

The defendant also claims that the court erred in instructing the jury that, "If any witness has willfully testified falsely as to any material fact in the case, then the jury *should* 10. Corrupt witness; province of jury. disregard all the testimony of such witness." This instruction was erroneous. (*Shellabarger v. Nafus*, 15 Kas. 547.) Even where a witness has testified willfully corruptly and falsely, to a material fact in a case, still the question as to whether the jury should disregard the whole of his testimony should be left entirely with the jury themselves. But the defendant did not object or except to the giving of said instruction; and hence he waived any error that may have been committed by the court in giving it. It may have been given for his benefit.

The defendant also claims that the court erred in refusing to give the 23d instruction asked for by the defendant, which instruction reads as follows:

"The jury are instructed that, unless they find from the evidence that in the altercation at Brack's corner George Potter was aided, counseled, or abetted by Isaac Potter in what he did, they cannot take said altercation at Brack's corner, or any acts, words, or conduct of George Potter into consideration in determining the guilt or innocence of defendant."

This instruction would have been very misleading and erroneous if given to the jury. The defendant Isaac Potter, and George Potter and Walter Boyle, were in one wagon, and the deceased, Jacob B. Keeley, and John Keeley, a son of the deceased, and Michael Brannon, were in another wagon. All were traveling in the same direction, Keeley's wagon behind. Keeley's wagon overtook Potter's wagon, and passed it. Afterward, Potter's wagon came up to Keeley's wagon at said Brack's corner. Here George Potter jumped out of Potter's wagon, picked up a stone about the size of two fists, threw it at Keeley's wagon, and hit the boy on the back of the head. Brannon testifies that then "George said he was very sorry he had hit the little boy; that he would not have hit him for ten thousand dollars; *that he wanted to kill the old man; that was his intention.*" Mr. Keeley, the deceased, was the only "old man" belonging to either party. Now, Isaac Potter was present, and unquestionably saw and heard all that was done and said at Brack's corner. Shortly afterward the Keeley party passed on. Afterward the Potter party followed and overtook them in Allbright's lane. Just before overtaking them however, each of the Potters (Isaac and George,) and Boyle, armed themselves, each with a piece of a fence rail, and after overtaking the Keeley party, Isaac Potter, who is now the defendant, did then and there "kill the old man," Jacob B. Keeley.

The defendant also insists "that the court erred in refusing to give the 25th instruction asked for by defendant," which instruction reads as follows:

"The jury are instructed that under the evidence in this

case they cannot convict the defendant of murder in the second degree."

This instruction was unquestionably rightly refused. There was unquestionably sufficient evidence to prove the offense charged, and to sustain the verdict of the jury. Some of this evidence was however contradicted by other evidence; but we have nothing to do with weighing the contradictory or conflicting evidence introduced. That was for the jury.

The defendant also claims that "the court erred in receiving the verdict in the manner it did, over the objections of defendant." The jury returned the verdict in the following form, to-wit: "We the jury find the defendant guilty as charged.—R. V. FLORA, Foreman." *13. Receiving and correcting verdicts.* The court suggested that the verdict was informal, and permitted it to be amended so as to read as follows: "We the jury find the defendant guilty of murder in the second degree, as charged in the information.—R. V. FLORA, Foreman." Before the verdict was amended the jury, through their foreman, told the court that it was their intention to find the defendant guilty of murder in the second degree, and after the verdict was amended it was read to the jury, "and the jurors collectively answered that it was their verdict." The court offered to have the jury polled, but neither party desired it. This was all done in the presence of both the defendant and his counsel. We perceive no error in this.

We have now considered all the questions raised by counsel, and we perceive no error in the rulings of the court below sufficient to authorize a reversal of the judgment below. The case has been very ably presented to us on both sides, and we would refer to the authorities cited in counsel's briefs, and to the arguments of counsel, for a more elaborate discussion of some of the questions involved in the case than we have been able to present.

The judgment of the court below must be affirmed.

All the Justices concurring.