ATCHISON, TOPEKA & SANTA FÉ RLD. CO. v. JOHN L. RETFORD.

1. INSTRUCTIONS; *Particular Facts; Error.* It is often unwise for a trial court to select a single circumstance from the evidence, and thereupon found a special and separate instruction to the jury. Such action may cause a misdirection to the jury, and be considered substantial error, although the instruction itself is not clearly erroneous.

2. ——— *Practice; Excepting to Instructions.* Where the court gives a series of instructions, each of which is separately stated and numbered, and the record of the exception reads as follows: "At the time of reading the above instructions to the jury, the defendant duly excepted to all and to each and every of them"—the supreme court will presume that exceptions were duly taken to each of the instructions separately.

3. ——— *Evidence; Preponderance of Testimony.* An instruction stating, "that a preponderance of the evidence does not necessarily imply the greater amount of evidence, but that which is most reasonable and easy of belief, under all the circumstances surrounding it," *held,* misleading.

*Error from Lyon District Court.*

RETFORD sued the *Railroad Company,* and recovered judgment at the March Term 1875, of the district court. The *Railroad Company* brings the case here on error. The facts, and the proceedings in the court below, sufficiently appear in the subjoined opinion.

*Ross Burns,* and *J. G. Waters,* for plaintiff in error.

*Ruggles & Sterry,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Retford brought suit against the plaintiff in error to recover damages for permanent disability of body and mind, resulting from an injury received by him on May 20th 1873, while in the performance of his duty as baggage-man on one of the trains of the A. T. & Santa Fé R. R. Co., in being hurled from the car by coming in contact with a coal-chute, erected by the railroad company at a switch, or station, called Peterton, and which coal-chute defendant in error claimed was within six inches of where the cars of the said railroad passed in going along the track, and thereby dangerous to the passengers and employés upon the cars passing the chute. He also alleged in his petition that the accident occurred without any fault on his part, while he, in a careful and prudent manner, and as a part of his duty, attempted to throw and toss letters and packages he had in his possession for the station of Peterton, to the station-agent there, the train at the time not stopping, but proceeding past the place at the rate of fifteen miles per hour. The plaintiff in error answered, denying all the allegations contained in the petition, and for a second defense admitted that Retford received an injury of some kind about the time stated, but averred that such injury was received without the fault of the plaintiff in error; that afterward, and before the bringing of this action, Retford made a claim for damages for such injury, and the plaintiff in error delivered to Retford $146,

<span style="margin-left:2em">Statement of the case.</span>

he accepting and receiving it in full satisfaction and discharge of the damages and cause of action alleged in his petition. Retford replied, denying the allegations contained in the second defense, and for a further reply alleged, that if he did receive the said sum of money it was received by him as and for wages due at that time from plaintiff in error for services rendered at the instance and request of plaintiff in error, and not in satisfaction of his claim mentioned in his petition. On the trial a general verdict was returned, assessing the damages of Retford at $4,500; and the following answers to the questions of fact submitted to the jury were also returned:

*Question* 1st.—Who located the coal-chute at Peterton, against which the plaintiff struck? *Ans.*—Charles Thatcher, the company's engineer.

2d.—Was or not the person who located and fixed the distance from the track of the coal-chute at Peterton, against which the plaintiff struck, a competent and skillful person for that purpose? *Ans.*—We do not know.

3d.—Did or not the person who located and fixed the distance of the coal-chute at Peterton against which the plaintiff struck, use his best judgment and skill in determining the distance from the track? *Ans.*—We do not know.

4th.—State whether or not the coal-chute was located at the distance from the track, usual and customary among railroads for such structures to be located and placed? *Ans.*—It was not.

5th.—What was the distance from the track of that portion of the coal-chute against which the plaintiff struck? *Ans.*—Three feet, four inches.

6th.—What was the distance from the outside of the baggage car in which plaintiff was at the time of the injury, to that portion of the building against which the plaintiff struck? *Ans.*—Eleven inches.

7th.—State whether or not coal-chutes along the line of railroads should not be, for convenience and use, placed as near the track as is compatible with the safety of passing trains? *Ans.*—Yes.

8th.—What was the speed of the train, at the time of the injury to the plaintiff? *Ans.*—Ten miles an hour.

9th.—What was the position of plaintiff while approaching

the coal-chute against which he struck? *Ans.*—Standing in the door, with his head and body partly out.

10th.—Did or not the plaintiff have his head and shoulders protruding from the side of the car, immediately prior to being struck? *Ans.*—Partly.

11th.—Did or not the plaintiff go to the side-door of the car, when the train first struck the switch? *Ans.*—No.

12th.—What was the distance from the building against which the plaintiff struck, to the switch? *Ans.*—Six hundred feet.

13th.—Was there, or not, any obstruction on or near the track to prevent the plaintiff from seeing the coal-chute, from the time of his first going to the door? and if so, what were the obstructions? *Ans.*—There were no obstructions.

14th.—Was he not, immediately before receiving the injury, leaning out of the car-door next the coal-chute, with his back toward the engine and coal-chute, talking and laughing with a person near the track, to whom he had thrown a paper? *Ans.*—Yes.

15th.—If the jury answer the last (or 14th) question in the negative, then state what the plaintiff was doing and his position immediately before receiving the injury? *Ans.*— ——.

16th.—Was there negligence on the part of the plaintiff, and if so, of what did it consist? *Ans.*—No negligence.

17th.—Was there negligence on the part of the defendant, and if so, of what did it consist? *Ans.*—Yes. In erecting the coal-chute nearer the track than usual, or customary.

18th.—Did the plaintiff execute the receipt marked "B"? *Ans.*—Yes.

19th.—Did the plaintiff execute the receipt marked "A"? *Ans.*—Yes.

Judgment was rendered for Retford for $4,500. Upon the trial, defendant in error offered evidence, against the objection of the railroad company, showing that soon after the injury to Retford the track was moved, at Peterton, so as to throw it about eight inches further out from the coal-chute. On the part of the plaintiff in error, it was shown by one Norton, who in June 1873 took charge of the track of the railroad at the place of the injury, that in the latter month he ordered the track moved back toward the coal-chute from four to six inches, which was done, and that he intended to move it still nearer

*1. Instructions; particular facts.*

to the chute. Upon the point, of the change of the distance from the track to the coal-chute, the court, against the objection of the railroad company, gave the following instruction to the jury:

"If you are satisfied from the evidence that soon after the happening of the injury complained of, the track of defendant's road was moved back some distance from the coal-chute, this you may consider as a circumstance tending to show negligence on the part of the defendant."

We do not think that there was any error committed in admitting the evidence as to the removal of the track after the injury. The jury could consider it for what it was worth, and with proper instructions it might have aided, in some degree, the jury in determining whether the railroad company changed the track on account of it being in too close proximity to the coal-chute for the safety of its employés, or for other reasons. The circumstance was a slight one in the case, but was not wholly immaterial. The instruction however, based upon this evidence, while possibly not erroneous, yet placed too much prominence upon the change of the track, and in view of the evidence, and the other instructions, had the tendency to mislead the jury. Frequently it is unwise for a trial court to select a single circumstance from the testimony, and upon that found a special and separate instruction, thus making it, as it were, the leading and prominent point for the jury to consider. In this case, such action was more than usually injudicious. Retford had rested his case, so far as the evidence on his part was concerned, upon his own evidence as to the injury, and proof that soon after the accident the track was thrown out about eight inches from the coal-chute. The railroad company in rebuttal mainly offered evidence as to the distance of the coal-chute from the track at the time of the accident; that it was erected at a safe distance from the track; and that the injuries which Retford received resulted from his own negligence in leaning outside of the car, while passing the coal-chute. This instruction, so objected to, brought the removal of the track

17—18 KAS.

prominently before the mind of the jury, and made this circumstance, to the exclusion of other matters, the great and asorbing question in the determination of the alleged negligence on the part of the railroad company, and thus resulted, unintentionally, in a misdirection of the jury. In the case of the *St. Jos. & D. C. Rld. Co. v. Chase,* 11 Kas. 47, where evidence was produced that the smoke-stack of an engine was changed after sparks therefrom set fire to and burned certain hay, because of the defective condition of the smokestack, Mr. Justice Valentine, in delivering the opinion of the court, held the instruction, limited and restricted as that was, not erroneous, but said, "The court possibly, however, gave too much prominence to a slight circumstance, such as this was." In that case, the instruction as to the change of the smoke-stack, after the firing of the hay from the sparks which escaped from such smoke-stack, did not state, as in this case, that such change could be considered a circumstance tending to show negligence.

On the trial, the counsel for the plaintiff in error asked the court to instruct the jury, "that if they believed from all the evidence in the case that the plaintiff had knowingly and willfully testified falsely to some material fact in the case, they were *at liberty* to disregard the whole of his testimony." This instruction was refused, and thereafter the court gave to the jury thirteen instructions in the case, the second one of which was as follows:

False witnesses.

"You are the exclusive judges of the evidence, of the facts proved or disproved, of the credibility of the witnesses, and of the weight to be given to their testimony. The law you will take from these instructions; and if you believe from the evidence that any witness has willfully and knowingly testified falsely to any material fact, you *shall totally disregard* all such witness's testimony."

Upon the giving of said series of instructions, numbered from one to thirteen inclusive, the counsel for plaintiff in error excepted "to all, and to each and every one of them." The exception to said second instruction was duly taken. *Kas. Pacific Rly. Co. v.*

2. Excepting to instructions.

*Nichols*, 9 Kas. 256.  Such instruction was erroneous.  *Shellabarger v. Nafus*, 15 Kas. 547.

The fourth instruction given by the court to the jury, was as follows:

"A preponderance of the evidence does not necessarily imply the greater amount of evidence, but is that which is most reasonable, and easy of belief, under all the circumstances surrounding it."

Clearness, as well as accuracy in an instruction, is of the first importance; and if an instruction permits the jury to draw an incorrect inference, or is given in so bungling a manner as rather to make the case obscure than to throw light upon it, the party aggrieved has just reason to complain.  This instruction is justly open to the criticism of being inaccurate, and awkwardly drawn.  As given, it could not have aided the jury in their deliberations.  If the court had stated, that the preponderance or weight of evidence did not reasonably imply the testimony of the greatest number of witnesses, it would have more correctly stated the law upon the point sought to be explained.  Neither is a "preponderance of evidence" accurately defined by the statement "that it is that evidence which is most reasonable, and easy of belief, under the circumstances surrounding it."  We think that in this instruction, the court in the haste of the trial, used inapt language to express the idea intended to be conveyed.

3. Preponderance of testimony.

If the above instructions had been given in a case where an examination of the record disclosed clear and convincing proof in suppport of the verdict below, we might not disturb a judgment founded thereon; and if but one of said instructions had appeared in this case, we would have had doubts of ordering a new trial.  But taking all the instructions above commented upon, and the closeness of the case, a combination of errors, slight under some circumstances, but serious in view of the surrounding facts, is presented which we cannot overlook.  The special findings of the jury do not satisfy us that the plaintiff in error suffered no prejudice on account of the giving of these instructions.  On the other hand, some

of the findings of the jury can only be accounted for, on the theory that they were misled by the instructions of the court.

The judgment is reversed, a new trial awarded.

VALENTINE, J., concurring.

BREWER, J.: I concur in the judgment of reversal in this case, but rest my conclusions upon grounds somewhat different from those expressed by the Chief Justice in the opinion of the court.    I am forcibly impressed with the conviction that the conduct of Retford, as disclosed by himself, and by the findings of the jury, was negligent, and such negligence as would bar any recovery.    The coal-chute was eleven inches from the outside of the baggage-car.    It was built at a station where the trains of the defendant occasionally stopped, and where was a switch, and side-track.    Retford was leaning his head, and shoulders out of the baggage-car far enough to reach the coal-chute, with his back toward the engine, and, without looking to see whether there was anything to render such a position dangerous, was talking and laughing with a person to whom he had thrown a paper.    There was nothing to have prevented his seeing the coal-chute if he had turned his face in that direction.    Now it seems to me, that it was negligence for an employé on a train, familiar with these facts, when approaching a place where he might reasonably expect that there would be buildings or other erections, temporary or permanent, to lean his body so far out of the car without looking to see what might be there to endanger such action.    It seems to me that the jury failed to give sufficient consideration to these facts.    It seems to me also, that the damages assessed were very large for the injuries testified to by the plaintiff.    I agree with the other justices, that it is probable that the jury were misled by the instruction in reference to the moving of the track, after the injury, inasmuch as a matter of trivial importance seemed to be given undue prominence.    I agree with them also that there was error in the instruction as to disregarding the entire testimony of a

witness who has willfully testified falsely on a material matter. I cannot think however that they were possibly misled by the instruction concerning the preponderance of testimony.