Hale v. Rawallie.

------

HIRAM F. HALE, *et al.* v. FRED RAWALLIE.

1. DILIGENCE—NEGLIGENCE; *Gratuitous Bailees.* A banker receiving a package of money as a special deposit without compensation, is bound only for slight care, and responsible only for gross negligence. [The rules defining the different degrees of negligence, and diligence, and stating the respective obligations and liabilities of the different kinds of bailees, as laid down in *The U. P. Rly. Co. v. Rollins*, 5 Kas., 180, 188, approved and followed.]

2. ———— A mere showing to a depositor of the facilities and security of a bank, is not such a representation as increases the obligation of the banker in the keeping of a deposit.

3. WITNESS; *When Jury may disregard Testimony.* Before a jury are authorized to disregard the whole testimony given by a witness, they must believe, from all the evidence in the case, that the witness has *knowingly and willfully* testified falsely in respect to some material fact in the case. [The rule stated in *Campbell v. The State*, 3 Kas., 488, 496, qualified.]

*Error from Davis District Court.*

FRED RAWALLIE, defendant in error, brought suit against *Hiram F. Hale* and *Elliot W. Rice*, to recover $15,000 deposited by him with them on the 25th of March, 1868, and so carelessly and negligently kept by them that it was wholly lost to him. Plaintiffs in error were bankers in Junction City, and received a package containing the money as a special deposit to be kept over night. The package was placed in the safe, but in the vault of the safe. During the night the money was taken away, and no trace of it ever afterwards obtained. Upon a second trial in the district court, at the September Term,

1869, the jury found in favor of the defendant in error for the amount of the money and interest. Upon this verdict judgment was entered, to reverse which judgment the case is brought here on error. The main question is as to the instructions given and refused; and these instructions, so far as they are material, are set forth in the opinion of the court.

*Canfield & McClure, Gillpatrick & Caswell* and *A. H. Case,* for plaintiffs in error:

1. Hale and Rice were bailees without reward. The court erred in refusing to instruct the jury that " the defendants under the evidence in the case are held to slight diligence only." 3 Kas., 257, 262.

" The depositary is bound to slight diligence only; and the measure of that diligence is that degree of diligence which persons of less than common prudence at all take of their own concerns." " Being a bailee without reward, the depositary is bound to slight diligence only; and he is not therefore answerable except for gross neglect." Story on Bailments, §§ 64, 62.

This court, in *Johnson v. Reynolds,* 3 Kas., 257, a case very similar to this case, said " That the reasonable care required under the circumstances was only that degree which persons of *less* than common prudence take of their own concerns." The court below, in this case, charges the jury that it was an " *imperative duty* that the defendants should have exercised more than common prudence in taking care of the package." For this error the judgment should be reversed.

2. There was error also in the instruction that if they find that " it was the custom of bankers to put their money packages in their vaults, and this was not ' so put, and the defendants could have so done it, the package was at the *entire* risk of the defendants." There was no proof of the " custom of bankers." One witness said such was the custom " so far as he knew," but he did not show that he knew anything or had the means of knowing anything about the custom in Junction City, or elsewhere.

9—8TH KAS.

3. Again, there was error in the charge as to representations which were not in proof, not as an illustration, not as upon hypothetical propositions, but as being a part of this case. No such representations were proved to be made; no such inducements were held out to Rawallie by Hale. No talk had with Hale about the vault raised the grade of responsibility of the defendants from slight diligence to ordinary or compensatory diligence. The court uses the words "stricter accountability," "higher degree of care." What is this—ordinary diligence, or extraordinary diligence? "Ordinary diligence is that degree of care required from the bailee who derives a benefit from the trust." Edw. on Bailments, 44.

*Martin & Burns*, for defendant in error:

1. The deposit was induced by plaintiffs in error. Not over a month from the day when he made his deposit, Rawallie was in the bank of Hale and Rice; he examined the safe and vault; Hale showed him the safe where the books were kept, and then showed him the vault where he kept his money; and he testifies that he would not have left his money with them had he known that it would not have been placed in the vault. He certainly expected, had a right to expect, and had been induced by Hale to believe, that if he deposited money in his bank it would be placed in the vault. Here then was a special inducement presented by Hale voluntarily, and without doubt, made to induce Rawallie to become a depositor in his bank. Under such circumstances the defendants were bound to exercise a higher degree of care in the keeping of the plaintiff's money than if no such representations had ever been made.

But independent of any representations or inducements, plaintiffs in error are liable upon the broad ground of gross negligence, in not placing the money in the vault, where common sense and common prudence, and universal custom demands that they should have put it, unless excused by Rawallie. As justly remarked by the court, they were bound to exercise that "degree of care and diligence, usually bestowed on property of the same kind, by individuals of common sense and prudence,

engaged in the same kind of business;" that is, that they are bankers, and must exercise the kind of care in relation to such deposits as bankers generally do, and that this care and diligence must be in proportion to the character and value of the deposit, and its liability to be stolen or lost.

The evidence clearly shows that Rawallie's package could have been in the vault; and for the failure of defendants to do so they are liable, for it was gross negligence not to do so; and in support of the law, as charged by the court, we invite attention to the following authorities: Edw. on Bailments, pp. 73, 95, 105, 128; Story on Bail., §§ 12 to 15, 33, 61 to 79, 97, 186; 2 Pars. Cont., pp. 91, 93, and notes; 2 Kent Com., pp. 750, 754; 11 Wend., 26; 5 Rawle, 190; 1 Snead, 248; 17 Ill., 170; 29 E. C. L., 80.

And we further submit to the court, that the most intelligent courts in the country generally disapprove of the classifications of negligence into degrees, for the reason that it is merely theoretical and wholly incapable of any practical application. Sher. & Redf. on Neg., pp. 15, 16, and authorities cited.

The opinion of the court was delivered by

BREWER, J.: The transaction between the parties amounted to a bailment, one of that species known as a deposit which is defined to be " a naked bailment of goods to be kept for the bailor without reward, and to be returned when he shall require it." The bailment was for the benefit of the bailor. Under these circumstances what obligations as to care and diligence rested upon the bailees, and what amount of negligence would cast the responsibility for loss upon them?

1. Diligence, negligence; gratuitous bailees.

Writers divide both negligence and diligence into three degrees, and assign the obligations of the different kinds of bailees to these several degrees. Mr. Justice VALENTINE, in giving the opinion of this court in the case of The U. P. Rly. Co. v. Rollins, 5 Kas., 180, 188, states these different degrees, and the rule of assignment clearly and succinctly. " Common or ordinary diligence is that degree of

diligence which men in general exercise in respect to their own concerns; high or great diligence is of course extraordinary diligence, or that which very prudent persons take of their own concerns; and low or slight diligence is that which persons of less than common prudence, or indeed of any prudence at all, take of their own concerns. Ordinary negligence is the want of ordinary diligence; slight or less than ordinary negligence is the want of great diligence; and gross or more than ordinary negligence is the want of slight diligence." "It is the universal law of bailments that where the bailment is for the benefit of both parties, the bailee is required to exercise ordinary care, and is liable for ordinary negligence. Where the bailment is for the benefit of the bailee alone, he is required to exercise great care, and is liable for slight negligence. But where the bailment is for the benefit of the bailor alone, the bailee is required to exercise slight care only, and is liable for gross negligence only."

It is evident from this that plaintiffs in error, in accepting the bailment of the package of money, contracted only to use slight care in its keeping, and to become responsible only for gross negligence. The learned judge who tried this case seems to have supposed that a failure to exercise ordinary care amounts to gross negligence, and so his statement of the obligations of the bailees is partially wrong. In one place he charges the jury that the bailee is liable for gross negligence only. This is correct. But elsewhere, having first instructed the jury that this was a deposit, he uses this language:

"The law presumes that the depositary undertakes to keep the deposit in the manner and with the degree of care and diligence usually bestowed on property of the same character by individuals of common sense and prudence engaged in the same kind of business. The bailee of a naked deposit is bound to use reasonable care and diligence in keeping the thing deposited."

Again he says:

"Ordinary care is defined generally as that care which men of common sense and prudence usually exercise over property of their own similar to that entrusted to their keeping as

bailees. The defendants were bankers, and received the plaintiff's deposit in that capacity. Then the question arises, what would be deemed ordinary care."

Thus defining "ordinary care," and placing it before the jury as the measure of obligation resting upon the plaintiffs in error, the jury would naturally infer that the failure to exercise this ordinary care was gross negligence for which plaintiffs in error were responsible. This error pervades a great portion of the charge, and for this the judgment must be reversed.

Exception is taken to that portion of the charge in which the court refers to the custom among bankers. There was, it is true, very slight testimony in regard to custom, but slight as it was, the court was justified in referring to it. It was one circumstance by which the attention of the jury is drawn to the amount of care required, and to the fact that negligence and diligence, and their several degrees, are relative and not absolute. The learned judge in his charge very happily and clearly pointed out the fact that that which was great care and diligence in the keeping of one kind of property might be gross negligence in respect to another kind. It is all important that the jury should bear this in mind to determine the amount of care requisite, and the degree of care used, in any given case.

The judge also charged the jury as follows: "If you believe from the evidence that the defendants, before the time the plaintiff made the deposit with them, had shown the plaintiff the vault of their safe, and represented to him that they used it for the safe-keeping of their money and *other valuables and deposits of money made with them, and that the plaintiff was induced to deposit his money package at defendants' bank through their representations,* the defendants are held to a *strict accountability,* and are *bound to exercise a higher* degree of care in the keeping of plaintiff's money deposit than they would be if no no such representations had been made to him;" and that "the depositary is bound so the observance of good faith and honesty towards his depositors; and if the jury find from the

2. What does not increase obligation for diligence.

evidence, *as last stated*, then the defendants should have put the plaintiff's package in the vault of their safe, if it were at all practicable to have done to, although it would have been necessary to have excluded therefrom property of their own of less value." The following is the testimony upon which this portion of the charge is based. It is the testimony of defendant in error:

" I have been in Hale's bank, and seen his safe, prior to March 25, 1868. I was there in the latter portion of February or first of March, 1868. I examined the safe at that time, and the vault. Hale showed me the safe where the books were kept, and then showed me the vault where he kept his money." And again, " I was in defendant's bank on the last of February or 1st of March, 1868, and examined the safe. Hale told me he kept his money in the vault; I don't recollect whether there was money or anything else in the vault at that time. I had made deposits for my brother, but not for myself, before that time."

In giving the instructions last mentioned, we think was error. They were not warranted by the evidence. Parties to a deposit may unquestionably make a special contract as to the place and manner of keeping the deposit, a breach of which will render the depositary liable. Representations may be made to induce strangers to commence or depositors to continue depositing which will call for increased care on the part of the bailee. But a mere showing to a depositor of the facilities and security of a bank, does not amount to any such representation as will enhance the obligations of the banker in regard to deposits by such depositor.

Before closing we think it proper to notice a point to which our attention was not called by counsel, but which unnoticed

3. Witness; rejecting testimony.
might occur on another trial with prejudice to one or the other party. In the two instructions asked by defendant in error and given by the court, the word *will fully*, or some word of kindred meaning should be used.* The

* EACH of the instructions referred to is in the exact words (except the name of the witness,) of an instruction quoted by SAFFORD, J., and pronounced good, in *Campbell v. The State*, 3 Kas., 496. Justice Safford, (pp. 495, 496,) says:

"The defendant asked the court to charge the jury as follows: ' If the jury believe, from all the evidence, that the witness Mollie Brown has testified falsely in respect to

testimony of a witness who in some point has ignorantly testified falsely is not wholly to be rejected. Only that witness is wholly to be disbelieved who has *knowingly* and *willfully* testified to a falsehood.

The judgment is reversed and the cause remanded for a new trial.

All the Justices concurring.

---

any material fact, it is their duty to disregard the whole of her testimony.' The court refused so to instruct, and to this ruling the defendant by his counsel excepted. In our opinion the language of the instruction embodies a sound principle of law, and * * * it ought to have been given to the jury."

In writing the opinion the word "willfully" was no doubt inadvertently omitted from the instruction, and the error was carried into the syllabus and the index. The instruction, as asked by defendant, is given in the statement of the case, (3 Kas., p. 489,) and is repeated by the counsel, in their brief, (p. 491,) and in both cases the word "willfully" occurs next before the word "testified." Its omission from the instruction, when quoted by the court, and the emphatic endorsement as so quoted, has no doubt misled both counsel and court in other cases than that of *Hale v. Rawallie.* It will be observed, however, that the court in this last case say that a witness to be wholly disbelieved must have *knowingly and willfully* testified to a falsehood.—REPORTER.