# First National Bank of Carlisle *versus* Graham.

A special deposit of bonds was left by a customer with the cashier of a national bank for safe keeping, with the knowledge of its directors, and the cashier gave a receipt therefor. The bonds were subsequently stolen and the bank offered no satisfactory explanation of the manner of the theft. *Held,* that there was sufficient evidence of gross negligence to be submitted to the jury. *Held, further,* that a recovery could be had against the bank if the bonds were stolen through the gross negligence of its officers.

June 22d 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *Cumberland county:* Of May Term 1877, No. 186.

Assumpsit by Fannie L. Graham against the First National Bank of Carlisle, to recover the value of four bonds deposited by her with the cashier of the bank, and for which she held the following receipt:—

"Carlisle, Pa., Oct. 22d 1868.

"Miss F. L. Graham has left in this bank, for safe keeping, four thousand dollars ($4000) in U. S. 5-20 bonds of 1867, to be returned on the return of this receipt.

(Signed) CHAS. H. HEPBURN, Cashier."

[First National Bank of Carlisle *v.* Graham.]

It appeared at the trial, before Herman, P. J., that the bonds were kept in the safe, inside the vault, in the bank.    On the 5th of August 1871 the bonds were stolen.    The fact that the loss occurred by theft was not denied, but the manner of the theft was not explained in any way.    It was shown that other parties had left bonds, at different times, in the bank for safe keeping and that some of the directors knew of this habit of receiving them on the part of the cashier.    It was in evidence also that having obtained the information that the bonds were stolen, from an outside source, about two weeks after the theft, Miss Graham made inquiry at the bank, and was told that they were stolen, but both the president and the cashier told her not to be alarmed, that she should lose nothing, and that she should come as usual, and the interest on the bonds should be paid her as usual.    This interest was credited to her on the books of the bank and was paid to her for two years subsequent to the loss. In 1873 the bank suspended payment and Miss Graham having demanded the bonds and failing to get them brought this suit.

The defendant contended that gross negligence must be proved, and as there was no evidence of such negligence on the part of the bank, asked for a compulsory nonsuit, which the court refused, and the verdict was for the plaintiff.

This refusal to enter a compulsory nonsuit was assigned, *inter alia*, for error by the defendant in bringing this suit.

*W. F. Sadler* and *S. Hepburn, Jr.*, for plaintiff in error.—The bank had no authority to take deposits for safe keeping.    No distinction exists between an act prohibited by law and an act of a corporation not authorized by law.    If unauthorized, it is illegal and void, and creates no liability which can be enforced at law : First Nat. Bank of Lyons *v.* Ocean Nat. Bank, 15 Sickels (N. Y.) 278 ; Wiley *v.* Nat. Bank of Brattleboro, 14 Am. Law Reg. 342 ; Fowler *v.* Scully, 22 P. F. Smith 456 ; Bank of Pennsylvania *v.* Commonwealth, 7 Harris 155 ; Bank of U. S. *v.* Dandridge, 12 Wheat. 64 ; Head *v.* Providence Insurance Co., 2 Cranch 167 ; Venango Nat. Bank *v.* Taylor, 6 P. F. Smith 14.

The *narr.* in this case is in assumpsit, and declares specially on the receipt of the cashier ; and his act being unauthorized, the bank is not liable : Wiley *v.* Bank, *supra* ; Foster *v.* Essex Bank, 17 Mass. 497 ; Ex parte Brown, 3 Deacon 91.

There was no evidence of gross negligence, and the burden of proving it is upon the plaintiff throughout : Scott *v.* Nat. Bank of Chester Valley, 22 P. F. Smith 471 ; Smith *v.* First Nat. Bank in Westfield, 99 Mass. 605 ; Adams Express Co. *v.* Sharpless & Sons, 27 P. F. Smith 522.

*John Hays* and *J. H. Graham & Son*, for defendant in error.— The question of the liability of national banks, where they receive

[First National Bank of Carlisle v. Graham.]

deposits for safe keeping, was raised and ruled in this court in First National Bank of Carlisle v. Graham, 29 P. F. Smith 106. It is well-settled law that a contract or promise may be proved by inferences drawn from corporate acts as well as in the case of an individual : Canal Bridge v. Gordon, 1 Pick. 297 ; Foster v. Essex Bank, *supra ;* Episcopal Charitable Society v. Episcopal Church in Dedham, 1 Pick. 372 ; Bank of Columbia v. Patterson, 7 Cranch 299 ; Dunn v. St. Andrew's Church, 14 Johns. 118 ; King v. Inhabitants of Chipping Norton, 5 East 240.

The unauthorized acts of a corporation are binding upon it, if subsequently assented to : Essex Turnpike v. Collins, 8 Mass. 292 ; Hayden v. Middlesex Turnpike, 10 Id. 397.

The judgment of the Supreme Court was entered, June 26th 1877, PER CURIAM.—Looking at the almost universal practice of banks of all kinds to accept special deposits of valuable securities from their customers, and the evidence in this case that such was the habit of this bank with the privity and knowledge of the directors and officers, we are of opinion that a liability for safe-keeping is raised by the receipt given to the plaintiff in this case for her bonds. If the bonds be lost or stolen through the gross negligence of the bank this liability becomes fixed. The debatable question in this case is whether there was sufficient evidence of such negligence to be submitted to the jury. Upon the whole evidence we think there was. Whether the bonds in question were lost, stolen or abstracted by some one in the bank does not clearly appear. It certainly is a circumstance of some weight that a satisfactory solution of the manner of the loss has never been given by the bank. If, then, we refer to the structure and arrangement of the banking house and the vault, we find it almost impossible that this vault could have been entered in broad daylight, as alleged it must have been, by a person entering to steal these bonds, without his being seen by the officers of the bank. If we add to this an entire absence of any breach of the windows, doors, vault and floors, through which an entry might have been effected, and that no information was given to the plaintiff of the loss of her bonds until she called herself, and then that she was called into a private room to communicate the loss, the case acquires more strength. And then, if finally she was told by the bank that the loss would not be hers but that of the bank, and that the bank would continue to pay her the interest, and accordingly did so for about two years, carrying the payments into the books of the bank, implying a consciousness of the officers that the loss was caused by some fault of the bank, we reach a point in the evidence of such strong import as to the fact of gross negligence, the evidence could not be withheld from the jury. Having been submitted to them, and gross negligence found

[First National Bank of Carlisle *v.* Graham.]

by them, and a new trial refused, we cannot say that the evidence was insufficient, and that an error was committed. The verdict establishes the negligence. We discover no error in the record and the judgment is affirmed.