LUCE *v.* ARKANSAS BRICK MANUFACTURING COMPANY.

Opinion delivered September 25, 1916.

1. APPEAL AND ERROR—STATEMENT OF TWO CAUSES OF ACTION—ELECTION—DUTY OF TRIAL COURT.—Appellee sued appellant, setting out two causes of action one for deceit and one for damages for negligence; *held* it was not error for the trial court not to require an election by appellee where appellee asked an instruction only upon the issue of negligence, and where the court instructed a verdict for appellant on the issue of deceit.

2. EVIDENCE—ACTION FOR DAMAGES—PERFORMANCE OF CONTRACT—OPINION.—In an action for damages for breach of contract, a witness for plaintiff was asked what plaintiff company had done in performance of its portion of the contract. Witness replied "everything." *Held*, the admission of this testimony was not erroneous, when witness then detailed the acts done by plaintiff company in the performance of its part of the contract.

3. EVIDENCE—REFRESHING RECOLLECTION—WRITTEN MEMORANDUM.—A witness may refresh his recollection from a memorandum, made by him at the time the transactions testified to were had.

4. EVIDENCE—STATEMENTS OF DEFENDANT.—Defendant undertook to burn certain brick for plaintiff by a certain process. In an action by plaintiff for damages for failure to perform the contract, testimony by a witness that one of defendants said "there is absolutely no use to fool with our brick unless he put coal in them; said it couldn't be done," is admissible, on the issue of defendant's negligence, and on the issue of whether it had violated its contract.

5. CONTRACTS—BREACH—SUFFICIENT EVIDENCE.—Defendant agreed to burn certain brick for appellee company, by a certain process at a cost not to exceed a certain figure. In an action by appellee for damages against defendant, the evidence held sufficient to show a breach of the contract by defendant.

6. CONTRACTS—BREACH—MEASURE OF DAMAGES.—Appellant agreed to burn certain brick for appellee, and if the burning was done at or below a certain figure the appellee agreed to pay appellant a certain sum for the right to use the process. Before the brick were properly burned appellant turned off the fires in the kilns, and appellee

brought an action for the resulting damage to it. *Held.* The measure of appellee's damage was the loss which it sustained by reason of appellant's negligence, viz., the value of the merchantable brick which it lost by reason of the failure on the part of appellant to comply with its contract.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

### STATEMENT BY THE COURT.

The appellee is a corporation engaged, among other things, in the manufacture of brick, at Little Rock, Arkansas. Appellant is a partnership, of Chicago, having the exclusive sales agency for what is designated as the "Lambert Process" of burning clay products, which will hereafter be designated as the "Process."

On the 17th of June, 1914, appellee and appellant entered into a written contract by which appellant agreed to install the process and burn for the appellee at least five kilns of brick, and as many as twelve kilns if the appellee demanded it. The appellant also agreed to furnish experts who were familiar with installing the process and burning the brick. Appellant was to furnish certain personal property, designated as "equipment."

The appellee was to pay the experts furnished by the appellant $500 per month while the brick was being burned. On completion of the burning of five merchantable kilns of clay products, acceptable in the local market, appellee agreed to purchase the right to use the process and to pay therefor the sum of $12,500.00. Appellee, under the contract, was to pay all the expenses of transportation of the process and equipment, and to furnish all the steam, fuel and labor, and to set up the kilns of clay products for burning according to the plans and specifications furnished by the appellant.

Under the contract the appellant was not to be responsible for the mistakes or misburns by the agents of the burner of the appellee, nor for any failure of oil supply. It was mutually agreed that if the fuel cost of burning the brick exceeded 50 cents per thousand brick,

appellee would not be required to pay the purchase money for the right to use the process.

There were other provisions of the contract which it is not material to state.

Appellee sued the appellant, alleging, as its first cause of action, that it had been induced to enter into the contract by reason of the representations of appellant that it could burn brick for less than fifty cents per thousand; that the representations were false, and that appellee relied upon them, to its damage in the sum of $8,405.00.

And for a second cause of action appellee alleged that the appellant had "committed a breach of contract by carelessly and negligently burning the brick so as to entirely spoil and ruin them and render them worthless;" that appellant "carelessly, negligently and wrongfully turned off the fire and heat for the purpose of misleading and defrauding the appellee in an effort to make it appear that the plaintiff's brick could be burned by the process at a cost not to exceed fifty cents per thousand;" that by the careless, negligent and wilful breach of the contract the appellee lost the amount expended by it for material and labor, as well as the value of the brick destroyed, to the damage of the appellee in the sum of $8,405.00, for which it prayed judgment.

The appellant moved to dismiss the complaint for misjoinder of causes of action, and also moved to have appellant elect as to causes of action. Appellant also demurred to the complaint. The court overruled these motions and the demurrer.

The appellant filed an answer, admitting that it had entered into the contract, but denying the other material allegations of the complaint, and setting up specifically that it had complied with the contract on its part, specifying the particulars, and that appellee had wholly failed to perform the contract upon its part, specifying the particulars, and alleging that by reason of appellee's failure to perform the contract on its part the appellant was prevented from carrying out the contract.

It alleged that it had been damaged in the sum of $12,500.00.

The appellee introduced the contract, which contained the provisions above set forth.

W. W. Dickinson, for the appellee, testified, among other things, that Mr. Luce, for the appellant, made certain representations to the effect that he could burn the brick by the process for less than fifty cents a thousand; that the clay in Chicago was very much of the same character as the clay at appellee's plant; that he had taken brick from appellee's plant; and had burned them in Chicago under the process and knew what he was talking about. And other representations to the effect that he had used the process at several places successfully. Appellant duly excepted to the ruling of the court in permitting this testimony.

There was testimony introduced on behalf of the appellee, over the objection of appellant, tending to prove that the appellee had performed the contract on its part, and specifying the particulars tending to show that it had carried out its contract. The testimony on behalf of the appellee further tended to show that in order to burn its kilns of brick so as to make them merchantable it was necessary that there should be from 2000 to 2125 degrees of heat; that the degree of heat was measured by an instrument placed in the kiln which was called a pyrometer; that appellant's agent in charge of the burning turned off the fire when the pyrometer registered 1640 degrees. Appellee called the agent's attention to the fact that the pyrometer did not show a sufficient degree of heat to burn the brick properly, and he said that the instrument was broken and was not registering correctly.

There was testimony on behalf of the appellee tending to show that when appellant's agent had burned oil enough to reach the contract price that he turned it off and quit; that if appellant had kept on the oil sufficient to raise the temperature of the brick to 2100 degrees the kilns would have been successfully burned and merchantable brick produced. A witness testified: "I

think if they had held back on those fires about five hours they would have burned the brick. Mr. Luce got out of line when he started to do under the same conditions he did in Chicago, and the conditions varied, and he was up in the air. I think when he burned enough oil to reach the contract price he quit on No. 1 and 3. I was standing there when Mr. Aregood was blowing the kiln and I said 'if you are going to do that there is not any use.' In the first kiln there was burned about 10½ gallons of oil and the second about 30 gallons, maybe 35. If they had not turned it off I think the result would have been different."

One of appellant's brick burners was asked why he posed as a brick burner when he could not burn the brick, and he replied: "I am under orders just like you are, and when I burn so much I have to quit." This brick burner was also a witness for appellant, and testified on cross-examination that appellant wanted to demonstrate that it could burn the brick for less than fifty cents a thousand. At the time they were burning the brick witness did not pay any attention to the oil until the kiln was burnt. He had been burning brick by oil. About 1730 degrees of heat was generated on the bottom of the first kiln. If they had burned more oil the heat would have overrun 2000 degrees. The reason they did not get over 2000 degrees of heat was because they did not use enough oil. They could have used that amount of oil by continuing to supply it in those kilns, but witness did not think it was necessary, and cut it off because he thought enough heat had been supplied.

On the other hand, there was testimony tending to prove that appellant would have carried out its contract if appellee had installed certain machinery, made certain changes in the pulleys, furnished hard coal screenings and plenty of fuel, and, furthermore, if there had not been excessive rainfall.

Over the objection of the appellant, appellee was permitted to prove that the cost of merchantable, or properly burned brick, was from $6 to $10 per thousand, and there was evidence tending to show that appellee's loss on

account of the brick not being properly burned was $7,422.00.

The court, at the instance of the appellee, and over the objection of appellant, instructed the jury as follows:

"You are instructed that on the 17th day of June, 1914, the plaintiff and defendants entered into a contract, by the terms of which, among other things, it was agreed that the defendants should burn not less than five and not more than twelve kilns of clay products by the Lambert process at the plaintiff's plant near the city of Little Rock, and if the fuel cost of burning said kilns should not exceed fifty cents per 1000 brick, the plaintiff was to pay to the defendants, among other things, $12,500.00 for the use of said process, but if the fuel cost of burning said kilns should exceed fifty cents per 1000 brick, then the contract in that respect was to be terminated and the plaintiff was not to pay any part of said $12,500.00. You are instructed that in burning the kilns of brick under the contract for the purpose of determining whether the fuel cost should exceed or be less than fifty cents per thousand brick, the defendants were bound to act in good faith and to burn merchantable brick acceptable in the local market if they were able to do so by the use of the Lambert process. If, therefore, you find from the evidence that defendants could have burned merchantable brick acceptable in the local market by the use of the Lambert process, but that, instead of completing the burning of said brick, they carelessly or negligently cut short the supply of oil and turned out the fires before the kilns were burned, and thereby ruined the kilns so that the brick were worthless, and inflicted a loss upon plaintiff, then your verdict should be for the plaintiff, on this issue, for the amount of the damage which the evidence may show it sustained."

The jury returned a verdict in favor of the appellee for $4,436.00, and from a judgment entered for that sum this appeal has been duly prosecuted. Such other facts as may be necessary will be stated in the opinion.

*Mehaffy, Reid & Mehaffy* and *A. P. Clark Matson* for appellants.

1. The demurrer and motion to require plaintiff to elect should have been sustained. The two causes of action were inconsistent. 1 Enc. Pl. & Pr. p. 166; 28 N. H. 134; 1 Cyc. Pl. & Pr. p. 181; Kirby's Digest, § 6079; 10 N. Y. St. Rep. 8; 4 Hun (N. Y.) 415; 63 Cal. 99; 58 Ark. 136; 23 *Id.* 637.

2. There was error in the admission and rejection of testimony. The testimony admitted was neither relevant nor admissible, and hence prejudicial. This is particularly true of the evidence of the Dickinsons. 1 Moore on Facts, § 1; 8 S. E. 387; 43 S. W. 913; 42 Ark. 542; 16 Cyc. p. 1115.

3. There is no evidence to sustain the verdict. The action is based on negligence alone and none is shown.

4. The court erred in its rulings and charge as to the measure of damages. Compensation is the value of the material plus the labor and money expended and is not the value of the finished product. 106 U. S. 432; 44 Fed. 129; 94 Ark. 511; 93 Ark. 353. It is only in cases of willful trespass that the increased value is allowed. *Ib.*

5. The verdict is excessive. See cases *supra.*

6. The court erred in its charge to the jury.

*Coleman & Lewis* for appellee.

1. Conceding that the two causes of action are inconsistent, still, under § 6080 Kirby's Digest, the plaintiff was privileged to strike from its complaint, at any time before submission any or either cause of action. This was done and no prejudice resulted.

2. The testimony objected to was relevant and proper. Jones on Ev. § 874.

3. There is evidence to support the verdict. It was contradictory, but the jury, under proper instructions found for the plaintiff.

4. There is no just cause for complaint as to the measure of damages, as the jury figured on a basis of

$6.00 per thousand, and deducted $522.00 from the amount.

5. There is no error in the instructions. No specific objections were made and defendant cannot complain. 95 Ark. 220; 87 *Id.* 607; 65 *Id.* 255; 102 *Id.* 640. The plaintiff lost the value of the brick by defendant's negligence and the verdict is right.

WOOD, J., (after stating the facts). I. Appellant contends that the court erred in overruling its motion to require appellee to elect between inconsistent causes of action and in overruling its demurrer to the complaint, which embraced inconsistent causes of action, and in admitting testimony as to alleged false representations made by one of the partners before the contract was entered into. Appellee, in its prayer for instruction, which the court granted, only asked that the issue of negligence set up in its second cause of action be submitted to the jury. This was tantamount to an abandonment by the appellee of its alleged cause of action for deceit and fraud. The court expressly instructed the jury, at the request of the appellant, "to find in favor of the defendants" (appellants) "on the first cause of action."

The legal effect of these rulings of the court was to permit appellee to strike from the complaint its cause of action for deceit and fraud and to withdraw that issue entirely from the jury. This is expressly authorized by section 6080 of Kirby's Digest. But even if the first cause of action had not thus been stricken out, the instruction to find affirmatively for the appellant on the first cause of action removed all possible prejudice that could have resulted to appellant from a consideration by the jury of this issue.

II. Objection is urged to various rulings of the court in the admission of testimony. (a) Witness, W. W. Dickinson, was asked by appellee this question: "After entering into the contract what did you do in the performance of it?" and answered, "Everything that he requested to be done."

After making the above answer, witness detailed the things that were done by him in the performance of the contract. There was no prejudicial error in witness stating his conclusion since he detailed the facts upon which the jury could determine whether or not the contract had been performed by the appellee. It was competent, under the issues joined, for the appellee to show whether or not it had complied with its contract. Appellee alleged "that it had performed all things required of it by the contract." This allegation was specifically denied by the appellant. Furthermore, appellant affirmatively alleged that appellee "failed in every way to comply with the contract, and that by its failure and refusal to perform the contract it prevented the defendants from carrying out the contract." And appellant alleged that it had been damaged in the sum of $12,500.00 "by reason of plaintiff's violation of the contract," and prayed judgment for such damages.

(b) W. W. Dickinson, Jr., testified that he kept a daily register of what transpired at the plant while the appellee and the appellant were operating under the contract. He was asked to refer to this for the purpose of refreshing his memory and to tell the jury what was done by the defendants (appellants) from the time they first came to the plant. The record shows that the court instructed the jury "that the written memorandum is not evidence and cannot be used as evidence in the suit, only to refresh the memory of the witness. The witness is required to testify from what he knows, not what he had written."

There was no error in the court permitting the witness to use the memoranda for the purpose indicated, and the court's rulings on the various objections along this line show that the court permitted the witness to use the memoranda solely for the purpose of refreshing his memory, and not as affirmative evidence.

(c) Counsel for appellants urge in their brief that the court erred in permitting W. W. Dickinson, Jr., to state what Leggate said. The record shows that the witness testified that Leggate, a partner in the firm

of appellants, while the brick were being burned, said to witness, "there was absolutely no use in trying to fool with our brick unless he put coal in them; said it couldn't be done."

This testimony was competent on the issue as to whether or not appellant had violated its contract and as to whether or not it was negligent in the manner of burning the brick.

(d)  There was no error in permitting W. W. Dickinson, Jr., to testify that 2100 degrees of heat would have burned the brick.  This testimony was relevant to the issue of negligence.

III.  It is next contended that there was no evidence to support the verdict.  The testimony on this issue is set forth in the statement, and we will not repeat it here. The testimony warranted the jury in finding that the appellant was negligent in not bringing the kilns to a sufficient degree of heat to successfully burn them. Appellant's attention was called to the fact, while the kilns were being burned, that the pyrometer, the instrument for measuring the degrees of heat, showed that the temperature of the kiln was not sufficient to burn merchantable brick.  While appellant's agent in charge stated that the instrument had been broken and was not working properly, the evidence does not show that he made any demand upon the appellee for a new instrument or that he was dissatisfied with the pyrometer that was being used, or took any steps to obtain another, and there was testimony before the jury sufficient to warrant the finding that the necessary temperature to burn the brick so as to make them merchantable was not produced because appellant's agent in charge of the burning negligently turned off the oil used as fuel and thus reduced the temperature or prevented the temperature from reaching the necessary degree to properly burn the brick.

The contract provided that if the fuel cost of burning the first five kilns, or any number of kilns demanded by the appellee, not to exceed twelve, was over fifty cents per thousand brick, then the appellee was not

liable to the appellant in the sum of $12,500 for the purchase price of the use of the process. There was sufficient evidence to warrant the jury in concluding that the necessary degree of heat was not attained because of the desire and effort on the part of the appellant in burning the brick to keep the fuel cost within the limit of fifty cents per thousand in order to secure the contract price for the use of the process.

IV. It would unnecessarily lengthen this opinion to set out the evidence in detail bearing on the issue as to whether or not the appellee violated its contract, and as to whether or not the appellant was negligent in the manner in which it burnt the brick. These were issues of fact for the jury, under the evidence.

V. The next question is, were these issues properly submitted. The contract bound the appellee to set up the kilns and install the machinery necessary for the use of the process, according to the plans and specifications to be furnished by the appellant, and to pay for the services of the experts that were necessary to be used in building the kilns and installing the machinery and in burning the brick. Appellee was also required to furnish all necessary steam and fuel.

The contract bound the appellant to burn at least five kilns of brick, and not more than twelve if demanded by the appellee, and these brick were to be burned so that they would be "merchantable, acceptable in the local market." If the cost of burning these was less than fifty cents per thousand, then appellee was to pay the sum of $12,500.00 for its right to the use of the process, according to the terms of the contract, but if the cost of burning the brick exceeded fifty cents per thousand, then appellee was not required to make the payments.

As we construe the contract, it absolutely bound the appellant to burn as many as twelve kilns of merchantable brick if the appellee demanded that many to be burned. It bound appellant to burn these kilns so as to make the brick merchantable whether the fuel cost exceeded fifty cents per thousand brick or not.

The contract, in these respects, is unambiguous and no oral testimony could be permitted to change its express terms. The language of the contract itself shows that the parties to it did not contemplate that there should be any experimenting to determine whether or not merchantable brick could be burned by the process. That they could be so burned was treated by the parties as a certainty. The only uncertainty contemplated by the parties was the cost of the fuel necessary to burn the brick so as to make them merchantable. This they treated as uncertain, and hence the contract only bound appellee to pay the purchase price ($12,500.00) for the use of the process in the event that the fuel cost of burning merchantable brick should not exceed fifty cents per thousand.

Appellee, by its complaint and evidence, and its prayer for instruction, has sought to hold the appellant liable for its negligent failure to burn the brick. The appellee's prayer for instruction was predicated upon the issue of negligence raised by the pleadings and it correctly declared the law applicable to the evidence adduced on that issue. The instruction, among other things, as to the measure of damages, told the jury that if appellant negligently cut off the supply of oil and turned out the fires before the kilns were burned and the kilns were thereby ruined so that the brick were worthless, then their verdict should be for the plaintiff for the amount of damage which the evidence showed that the appellee had sustained.

Counsel for appellant urge that this portion of the instruction fixed an erroneous measure of damages. The instruction told the jury that if they found in favor of the appellee on the issue of negligence their verdict should be for the amount of damage which the evidence showed that the appellee had sustained. There was evidence tending to prove that appellee lost by reason of the failure to burn the kilns a total of 1237 thousand brick; that the minimum price for merchantable brick was $6.00 per thousand; that these brick which were not successfully burned by the process were worthless—a total loss. If this is true, the only rule that would allow appellee com-

pensation for the damage it had sustained for the violation of the contract would be to permit appellee to recover the value of merchantable brick on the number of brick lost by appellant's failure to burn. It will be seen from this that the jury might have returned a verdict for $7,422. Their verdict for the loss of the brick was $6,900, $522 less than the actual loss according to the testimony adduced on behalf of the appellee. The instruction was correct in fixing the measure of damages at the "loss which appellee had sustained."

Appellant contends that the instruction permitted the jury to give appellee damages not only for the material and money expended by it, but also for the increased value of the manufactured brick. Under the contract appellee was to pay for all the labor and material furnished, and there was testimony which would at least warrant the finding by the jury that appellee had performed its contract in this as well as in other respects. The jury having so found, appellee was entitled, under the law and the evidence, to have the appellant perform its contract by the burning of merchantable brick. In other words, the jury were warranted in finding that if appellant had performed the contract on its part then appellee would have had on hand merchantable brick manufactured at its expense, which, on the local market, were worth more than the amount of the verdict returned by the jury. The total loss of this brick having been caused by the negligence of appellant, as the jury found, it was liable for the value of the brick so lost. Merely remunerating the appellee for the amount it had expended for material and labor in preparing and burning the brick would not compensate it for its loss under the contract. Appellee, under the contract, was entitled to be compensated to the extent of the value of the number of merchantable brick which it lost by reason of the failure on the part of appellant to comply with its contract.

It follows from what we have said that the verdict was not excessive, and the court did not err in refusing prayers for instructions on the part of appellant which

were not in harmony with the construction which the trial court and this court has placed upon the contract.

It was conceded by the parties that the appellee had in its possession personal property of the appellant of the value of $2,640.00. The jury, under the court's direction, reduced the verdict in favor of the appellee by this amount and returned a verdict for the balance, for which judgment was entered.

The judgment is correct, and it is therefore affirmed.

SMITH, J., (dissenting). I concur in all that is here said except that I think the court has approved an erroeous measure of damages. In my opinion the recovery should have been limited to the value of the material used and the money expended in the attempt to manufacture this material into brick.

Mr. Justice KIRBY concurs in this view, if any recovery is permitted, but he is also of the opinion that no liability is shown and that a verdict should have been directed in appellant's favor.