WIMBERLEY *v*. BANK OF PORTIA.

Opinion delivered April 23, 1923.

1. BANKRUPTCY—JURISDICTION OF BANKRUPTCY COURT.—While a bankruptcy court may, by summary proceedings, compel a person who is in possession of property of the bankrupt, but who claims no adverse title thereto, to restore such property to the trustee, yet where the party in possession asserts an adverse title thereto, the court cannot act summarily and make an order for its return to the trustee, but a suit must be brought in the proper forum by the trustee against such adverse claimant.

2. BANKS AND BANKING—EFFECT OF GENERAL AND SPECIAL DEPOSITS.—While a general deposit of money in a bank creates the relation of debtor and creditor, and authorizes the bank to use the mon-

ey as its own, such result does not obtain when the deposit is made for a special purpose, as, for example, to be paid to creditors.

3.   BANKS AND BANKING—RIGHT TO APPLY SPECIAL DEPOSIT.—Where money was deposited by a merchant in a bank as a trust fund to be used by a designated trustee for the purpose of paying creditors *pro rata*, the bank had no right to apply such funds toward the payment of a note owed to it by the merchant.

Appeal from Lawrence Chancery Court, Eastern District; *Lyman F. Reeder,* Chancellor; reversed.

STATEMENT OF FACTS.

Z. C. Wimberley, as trustee in bankruptcy for the estate of A. L. Pickens, bankrupt, brought this suit in equity against the Bank of Portia to recover the sum of $1,245 alleged to be due the bankrupt. The complaint and proof show that, at the time Z. C. Wimberley was appointed trustee in bankruptcy of the estate of A. L. Pickens, the Bank of Portia had on deposit $1,245 belonging to said A. L. Pickens.

It appears from the record that A. L. Pickens was engaged in the general mercantile business at Portia, Ark., and did business with the Bank of Portia, which was running a bank there. In December, 1920, A. L. Pickens discovered that he was insolvent, and, after talking with the cashier of the Bank of Portia, he went to Jonesboro and consulted Z. C. Wimberley of the Wimberley Grocer Co., which was engaged in the wholesale grocery business, and was one of the creditors of A. L. Pickens in the sum of $900. A. L. Pickens went to Jonesboro on the 23rd day of December, 1920, and at the time intended to file a voluntary petition in bankruptcy. After consulting with Z. C. Wimberley, who called other creditors over the long distance telephone, it was agreed that a contract should be drawn up providing for the continuance of the business by A. L. Pickens under the direction of Z. C. Wimberley as trustee for all the creditors. The contract provided that Wimberley, as trustee, should assume the responsibility for the control and

management of the business, and should pay all the creditors *pro rata* from the amount which should be realized therefrom. The agreement contemplated that the business should be wound up in this way and the proceeds divided ratably among the creditors, in order to avoid the expenses of bankruptcy proceedings. The agreement was conditioned upon the acceptance of the other creditors, or of a sufficient majority thereof in point of numbers and amount of indebtedness, to prevent the said A. L. Pickens from being forced into bankruptcy. The sum in controversy was realized from the conduct of the business of A. L. Pickens under this agreement, and the deposit of it by him in the Bank of Portia.

According to the testimony of Z. C. Wimberley and A. L. Pickens, Wimberley called up the Bank of Portia, before the agreement in question was entered into, and the cashier of the bank understood the purport of the agreement, and said that he thought that it was the best way to wind up the business. A. L. Pickens then started a new account with the bank, and the sum in controversy in this case was deposited by him under the agreement above referred to.

Mrs. A. L. Pickens worked in the store for her husband, and testified that she obtained a new bank book from the bank, which was labeled "New Account."

According to the testimony of all these witnesses, it was understood by the bank that the amounts deposited there on the new account should constitute a trust fund to be used by Wimberley in paying the creditors of A. L. Pickens *pro rata*.

The cashier of the Bank of Portia was a witness for it. He denied that the Bank of Portia was a party to the agreement that Wimberley should act as trustee for all the creditors, and that the amounts deposited in the bank by A. L. Pickens should be treated as a trust fund to be paid ratably to all the creditors of A. L. Pickens. He stated positively that the money was deposited by A. L. Pickens thereafter in the ordinary course of

business. He admitted that he gave Mrs. A. L. Pickens a new bank book, and that it might have been marked "New Account." He stated, however, that he gave her the new book because the old one was about filled up, or practically worn out. On the 5th day of January, 1921, the president of the Bank of Portia suggested that the balance of A. L. Pickens in the bank should be charged off the books and the amount entered as credit on the note which Pickens owed the bank. The witness then credited the note of·A. L. Pickens to the Bank of Portia with the $1,245 which A. L. Pickens had deposited there since the 23rd day of December, 1920. A. L. Pickens then filed a petition in bankruptcy, because, as he expressed it, there was nothing else to do. He stated that he, in good faith, had endeavored to carry out his agreement with his creditors, but had been prevented from doing so by the bank's applying the money which he derived from the conduct of his business to the payment of its own note, to the exclusion of his other creditors.

The trustee in bankruptcy filed a petition with the referee in bankruptcy to require the Bank of Portia to pay over the money in controversy to the trustee as the property of the bankrupt estate. This summary proceeding was denied by the referee, on the ground that the bank had an adverse claim to the fund, and that it could only be prosecuted in a plenary proceeding. Upon review the judge of the bankruptcy court sustained the conclusion of the referee in bankruptcy.

The chancellor found that A. L. Pickens owed the Bank of Portia a note which was due it, and that it had the right to credit the amount he had on deposit in the bank on that note.

A decree was entered dismissing the complaint of the trustee for want of equity, and the case is here on appeal.

*A. A. Patton,* for appellant.

The assignment made by the insolvent debtor for the benefit of his creditors was valid, and the money realized thereafter was put in the bank as a trust fund, and could not be applied in payment of the bank's claims against the debtor, and the chancellor erred in holding otherwise. 52 Ark. 30; 80 Ark. 182; § 489, C. & M. Digest; 122 Ark. 40; 6 Ark. 161; 104 Ark. 222; 60 Ark. 1; 58 Ark. 556. Trust fund could not be applied by bank to payment of its claims against the creditor. 69 Ark. 47; 68 Ark. 71; 28 L. R. A. (N. S.) 484; 104 U. S. 54.; 34 U. S. L. ed. 724; 136 Ark. 441; 104 Ark. 558.

*Ponder & Gibson,* for appellee.

There was no valid assignment or agreement appointing trustee, and cases cited by appellant have no bearing upon the case made here. It was a general deposit, and the bank had the right to appropriate it to payment of its claims against the creditor. 104 Ark. 550; 69 Ark. 47; 56 Ark. 499; 118 Ark. 114; 114 Ark. 170. 28 L. R. A. (N. S.) 484, cited for appellant not applicable, there being no agreement for Wimberley as trustee. The proceedings in bankruptcy and the findings of the referee in the matter are binding and conclusive in appellee's favor.

HART, J., (after stating the facts). It is first sought to uphold the decree on the ground that the matter is *res judicata.* In making this contention, counsel rely upon the decision of the bankruptcy court sustaining the conclusion of the referee in denying the petition of the trustee in bankruptcy to require the Bank of Portia to pay over the money in controversy to the trustee as the property of the bankrupt estate.

The court of bankruptcy may, by summary proceedings, compel a person who is in possession of the property of the bankrupt, but who claims no adverse title thereto, to restore such property to the trustee. On the other hand, where the party in possession of the property asserts an adverse claim thereto, the bank-

ruptcy court cannot act summarily and make an order to return it to the trustee, without the formality of litigation. In such cases there must be a suit brought in the proper forum by the trustee in bankruptcy against the adverse claimant to adjudicate his claim of title to the property. Collier on Bankruptcy, 12 ed. vol. 1, pp. 523-529; *Hiscock* v. *Varick Bank of New York,* 206 U. S. 28; *Frank* v. *Vollkommer,* 205 U. S. 521; *Babbitt* v. *Dutcher,* 216 U. S. 102, and *Harris* v. *First National Bank of Mt. Pleasant,* 216 U. S. 382.

Having denied the plea of *res judicata* of the defendant, we are brought to a consideration of the case on its merits. It is a general rule that funds deposited in the bank for a special purpose known to the bank cannot be withheld from that purpose to the end that they may be set-off by the bank against a debt due it from the depositor. In other words, while it is true that a general deposit by a merchant of money in a bank creates the relation of debtor and creditor, and authorizes the bank to use the money as its own, such result does not obtain when the deposit is made for a special purpose; as, for example, to be paid to creditors. *Wagner* v. *Citizens' Bank, etc., Co.*, 122 Tenn. 164, 19 A. & E. Ann. Cas. 483, and cases cited; *Van Zandt* v. *Hanover Nat. Bank,* 149 Fed. 127; *Bank of United States* v. *Macalester,* 9 Penn. St. 475; *National Bank* v. *Insurance Co.,* 104 U. S. 54; *Reyes* v. *Dumont,* 130 U. S. 354; and *Union Stock Yards Bank* v. *Gillespie,* 137 U. S. 411.

Tested by this rule, we think that the learned chancellor erred in finding in favor of the defendant in this case. We recited the substance of the testimony in our statement of facts, and do not deem it necessary to repeat it here. A preponderance of the evidence shows that the money was deposited in the bank by A. L. Pickens as a trust fund to be used by Z. C. Wimberley as his trustee in paying off all of his creditors *pro rata.* This is testified to not only by Pickens himself, but by his wife and Z. C. Wimberley. They are corroborated

by the fact that a new bank book was given to Pickens at the time the agreement was entered into, and this book was marked "New Account." This indicates that the new account was different from the old one.

It is true that the agreement under which they operated was conditioned upon its acceptance by the other creditors of A. L. Pickens sufficient in number and amount of indebtedness to prevent his being forced into bankruptcy. It does not make any difference, however, that the formal consent of all these creditors was never obtained. The evidence shows that the parties operated under it from the time it was drawn up and signed by a part of the creditors. The bank so understood it, and on this account the money thereafter deposited by Pickens in the Bank of Portia constituted a trust fund to be applied ratably towards the payment of all his debts, and the bank had no right to apply the funds towards the payment of a past due note which Pickens owed it.

It follows that the decree will be reversed, and the cause remanded, with directions to grant the prayer of the complaint, and for further proceedings in accordance with the principles of equity and not inconsistent with this opinion.